[No. 29319. *En Banc.* October 27, 1944.]

WASHINGTON CHOCOLATE COMPANY, *Respondent*, v. KING COUNTY *et al., Appellants.*[1]

¹Reported in 152 P. (2d) 981.

*Lloyd Shorett* and *Edwin C. Ewing,* for appellants.

*Falknor, Emory & Howe,* for respondent.

BEALS, J.—Washington Chocolate Company, a corporation organized pursuant to the laws of this state, filed its complaint, naming as defendants, King county, Ralph S. Stacy, as county assessor, and Carroll Carter, as county treasurer. In its complaint, after formal allegations, plaintiff alleged that it was engaged in the manufacture and sale at wholesale of chocolate and cocoa, which it manufactured from cocoa beans imported from the African Gold Coast, Brazil, and other foreign nations; that plaintiff imported the cocoa beans into the United States through the port of New York and other domestic ports, the beans being transported by rail to Seattle at the import freight rate, which plaintiff paid; that, upon reaching Seattle, the beans were stored by plaintiff either at its manufacturing plant in the city of Seattle or at a warehouse in that city, where the beans remain until used by plaintiff in the course of its manufacturing business; that the cocoa beans are imported into the United States and received by plaintiff in gunny sacks, each containing approximately one hundred forty pounds of merchandise; that, upon receipt by plaintiff, the beans are not mingled with the common mass of property within the state of Washington, but remain in their original form or package in which they were imported, without being opened, and are so marked as to be identified as property imported from foreign nations.

Plaintiff further alleged that January 1, 1943, it was the owner of certain sacks of imported cocoa beans stored at its factory and in a warehouse, and that September 27, 1943, defendant Stacy, as assessor of King county, assessed the cocoa beans for the purpose of taxation for the year 1943 at a valuation of $34,380; that, at the time of the assessment, plaintiff stated to the assessor that it claimed that the beans, as foreign imports, were exempt from taxation, but, notwithstanding plaintiff's claim, the assessor extended upon his books a record of the cocoa beans as subject to assessment and taxation.

Plaintiff further alleged that the tax assessment referred to in its complaint was not made for the purpose of executing the inspection laws of the state of Washington, but was made solely for raising general revenue for the state of Washington and King county.

Plaintiff then alleged that the purported assessment is illegal and void, in that it violates Art. I, § 8, paragraph 3, and Art. I, § 10, paragraph 2, of the constitution of the United States.

After alleging that it had no plain, speedy, and adequate remedy at law, plaintiff prayed for a decree declaring the levy and assessment above referred to null and void, and that the defendants, Stacy, as county assessor, and Carter, as county treasurer, be restrained and enjoined, the assessor from delivering to the county treasurer for collection the assessment referred to, and the treasurer from proceeding to enforce any tax levied on the cocoa beans pursuant to the assessment. Plaintiff asked for such other and further relief as might be proper, and for judgment for its costs.

To the complaint, the defendants jointly demurred, first, upon the ground that the court had no jurisdiction of the person of the defendants or the subject matter of the action because of the failure of the plaintiff to comply with the requirements of chapter 62, Laws of Washington, 1931 (Rem. Rev. Stat., § 11315-1 *et seq.*, as amended); and, second, upon the ground that the complaint failed to state facts

sufficient to constitute a cause of action, or to entitle the plaintiff to the relief sought thereby.

After argument, the court entered its order overruling the defendants' demurrer, holding that, upon the allegations of the complaint, the truth of which was admitted by the demurrer, the property in question was exempt from state taxation, and the defendants having in open court announced their election to stand upon their demurrer, and having refused to answer or further plead, judgment was entered declaring the assessment against the cocoa beans null and void, and directing the defendant assessor to cancel and remove the assessment and levy from the personal property tax rolls of King county. Defendant assessor was also enjoined from certifying the assessment and levy to the defendant county treasurer for collection, and the treasurer was enjoined from proceeding to collect any personal property tax against the merchandise referred to, pursuant to the assessment and levy. ·

From the judgment the defendants have appealed, assigning error upon the ruling of the court that the merchandise referred to was exempt from taxation, and that §§ 2 and 7 of chapter 62, pp. 201, 204, Laws of 1931 (Rem. Rev. Stat. (Sup.), §§ 11315-2 and 11315-7 [P. C. §§ 6882-190 and 6882-195]) were not applicable to the situation presented by the complaint; and upon the the order of the court overruling appellants' demurrer. Appellants also assign error upon the court's ruling that the merchandise sought to be taxed was not subject to local *ad valorem* property taxation, because the property was an import remaining in the original packages, and that the tax sought to be imposed was repugnant to the provisions of Art. I, §§ 8 and 10, of the constitution of the United States. Error is also assigned upon the entry of judgment holding the assessment void and enjoining collection of the tax.

■ Appellants contend that the trial court erred in holding that the allegations of respondent's complaint brought the proceeding without the terms of chapter 62, p. 201, Laws of 1931 (Rem. Rev. Stat., § 11315-1 *et seq.*, as amended), and in ruling that respondent could maintain any action

without first paying under protest the tax levied against the property (Rem. Rev. Stat. (Sup.), § 11315-2). Rem. Rev. Stat., § 11315-1, reads as follows:

"Injunctions and restraining orders shall not be issued or granted to restrain the collection of any tax or any part thereof, or the sale of any property for the non-payment of any tax or part thereof, except in the following cases:

"(1) Where the law under which the tax is imposed is void; and

"(2) Where the property upon which the tax is imposed is exempt from taxation."

Rem. Rev. Stat. (Sup.), § 11315-7, reads as follows:

"Except as permitted by this act, no action shall ever be brought or defense interposed attacking the validity of any tax, or any portion of any tax: *Provided, however,* That this section shall not be construed as depriving the defendants in any tax foreclosure proceeding of any valid defense allowed by law to the tax sought to be foreclosed therein except defenses based upon alleged excessive valuations, levies or taxes."

The act was held constitutional in *Casco Co. v. Thurston County,* 163 Wash. 666, 2 P. (2d) 677, 77 A. L. R. 622. The statute has been discussed in over a dozen later cases. .

Article I, § 8, of the constitution of the United States, reads in part as follows:

"The congress shall have power,—

"To regulate commerce with foreign nations and among the several states and with the Indian tribes."

The second paragraph of § 10 of the same article reads as follows:

"No state shall, without the consent of the congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws; and the net produce of all duties and imposts, laid by any state on imports or exports, shall be for the use of the treasury of the United States; and all such laws shall be subject to the revision and control of the congress."

Appellants rely upon the fact that there is no statute of the state of Washington granting exemption from state taxation to merchandise while moving in interstate or

foreign commerce. Appellants admit that property so moving may be immune from taxation, and that any tax imposed thereon by a state in violation of the Federal constitution or statute may be illegal or invalid, but contend that such property is not exempt from taxation within the meaning of our state statute above quoted.

The statute does not purport to limit its scope to state statutes, and, if property is "immune" from taxation because of provisions of the Federal constitution, it is certainly "exempt from taxation" within the meaning of our state statute.

If respondent's contention that so much of its property as is the subject matter of this action, while remaining in its present form, may not be subjected to the general taxing power of the state of Washington as exercised by the assessor and treasurer, respectively, of King county, is well founded, it follows that the levy made by appellant assessor is in fact void, and that no tax may be collected pursuant thereto. Appellants contend, however, that the question stated cannot be presented in such an action as this, and that the only manner in which respondent may secure any relief to which it may be entitled is by following the procedure outlined in Rem. Rev. Stat. (Sup.), § 11315-2, by paying the tax under protest, and suing to recover judgment for the amount so paid.

If in fact the cocoa beans, in the form in which they were at the time of the institution of this action, were free from the burden of enforced contribution to the expenses of government because they had not then lost their character as imports from foreign nations, and were therefore within the scope of the provisions of the Federal constitution above quoted, they were exempt from taxation by the state. In the absence of any such constitutional protection, the property in question would be subject to taxation to the same extent as other property taxed in this state. A situation is presented, then, under which property which would ordinarily be subject to the taxing power of the state of Washington claims an immunity from state taxation, be-

cause of its character as an import from a foreign nation, pursuant to the provisions of the Federal constitution.

Appellants argue that, regardless of whether or not the property finally be held free from taxation or subject to a tax, the situation presented by respondent's complaint does not bring that question within the section of the statute above referred to, providing for the issuance of injunctions in such cases as this in the two situations therein mentioned.

Appellants argue that, pursuant to the statute, the collection of a tax may be enjoined only when the law under which the tax is imposed is void, or where the property sought to be taxed is exempt from taxation, and that the admitted facts of this case bring it within neither condition.

In 61 C. J., title "Taxation," p. 382, § 382, is found the following:

"Exemption, as applied to taxation, is freedom from the burden of enforced contribution to the expenses and maintenance of government, and may include freedom from the burden of taxes accrued and unpaid as well as from the burden of future levies. The term, as here used, presupposes a liability, and is properly applied only to a grant of immunity to persons or property which otherwise would have been liable to assessment. Furthermore, the right to immunity is not inherent in the person or property exempted, but exists only by grant supported on grounds of public policy."

In the case at bar, we are considering private property which, if immune from taxation, has acquired such immunity because it has been relieved from the burden of taxation by express provisions of the Federal constitution.

Beyond question, the cocoa beans were so immune from taxation while in process of importation. Appellant contends, however, that that process has ended, and that the property has lost its character as an import because of having come to rest in respondent's factory and warehouse.

Respondent then contends that the property is exempt from taxation because of the provisions of the Federal constitution, while appellants contend that, at the time of the

levy, the property had lost its status as an import, and consequently was no longer immune from taxation.

In the case of *Petroleum Nav. Co. v. King County,* 1 Wn. (2d) 489, 96 P. (2d) 467, the plaintiff sought a decree declaring void personal property taxes levied by the officers of the county against a vessel, the Aleutian Native, which vessel the plaintiff alleged was registered in the territory of Alaska, and had its situs as taxable property in that jurisdiction. The plaintiff, without paying the tax under protest, instituted an action, praying for an injunction restraining collection of the tax, and declaring the same illegal and void. The trial court, being of the opinion the tax was void, granted the injunction demanded by the plaintiff. On appeal by the county and its officers, this court, while holding valid the tax levied by the county, held that under the allegations of the complaint the action praying for an injunction was properly brought, and might have been maintained, if well founded in fact. Chapter 62, Laws of 1931, *supra,* was considered, as were several decisions of this court in which the law had been cited.

In the opinion it is stated that any contention that the vessel in question was exempt from taxation, within the meaning of the statute, would not be well founded, and that the term exemption presupposes a liability, "and is properly applied only to a grant of immunity to persons or property which otherwise would have been liable to assesssment." Property having no situs within the state of Washington would never be liable to taxation by this state. In the course of the opinion, the court said:

"It would not be contended that the court would not have jurisdiction, under Rem. Rev. Stat., § 11315-1, subd. 1, to entertain an action to grant injunctive relief, had it been alleged that the law under which the purported levy was made and tax imposed was void. Undoubtedly, the reason for allowing such relief is that any tax imposed pursuant to a void law would be absolutely void, and it would therefore be an unreasonable and useless proceeding to require that, in such a case, the tax must first be paid and then an action brought to recover it back. What, then, in effect, is the difference between a situation such as just pre-

sented, and a situation such as presented by the complaint in the instant case, where it is alleged that the domicile of the owner of the property taxed was at all times in Alaska, that the vessel never acquired a situs within the territorial limits of King county, and that therefore the tax sought to be collected is absolutely void? We can see no reason for holding that the court would have jurisdiction in the first instance, and not in the present case. We are therefore of the opinion that the court had jurisdiction to entertain this action.

"The thing which the statute intended should be subject to injunctive relief is the 'void tax' which would necessarily result whether the levy was based upon a void statute or whether made without any purported statutory authority."

The holding of the court in the case cited was clearly correct.

In the later case of *Lake & Co. v. King County,* 3 Wn. (2d) 500, 101 P. (2d) 357, this court affirmed a decree of the superior court entered in favor of the plaintiff, enjoining the collection of certain personal property taxes levied by the county against stocks of liquor held in a warehouse pursuant to regulations of the Washington state liquor control board. As stated in the opinion, the question presented was the taxability of the liquor while held in storage for transshipment without the state, and whether while in that condition "its movement in the flow of interstate commerce had ceased and it had become part of the general mass of property within the state." We held that the liquor in question had not lost its status as property moving in interstate or foreign commerce, and that for this reason it had not become a part of the general mass of property within the state, subject to its taxing power.

In answer to the objection that the plaintiff had no right to maintain the action without first paying the tax under protest, this court said:

"We may say that the question raised is disposed of adversely to the treasurer's contention in the case of *Petroleum Nav. Co. v. King County,* 1 Wn. (2d) 489, 96 P. (2d) 467."

It would seem that the result reached in the case last cited might well have been based upon the ground that the property sought to be taxed was exempt because placed beyond the taxing power of the state by the constitution and statutes of the United States, but in any event the result reached was correct.

While property is moving in interstate commerce, it is exempt from state taxation, and is rendered exempt by the Federal constitution and statutes, and its status as exempt property may be tested by the owner without first paying under protest the tax sought to be collected.

While property enjoys the status of an import from a foreign nation, it is also exempt from taxation pursuant to the constitution of the United States, and this status may also be tested in the state courts in such an action as this, without payment under protest of the tax sought to be imposed upon the property.

The existence of either one of these two situations presents a case which falls within paragraph 2 of § 11315-1, *supra.*

We are convinced that respondent's complaint brings the question presented within the terms of paragraph 2 of § 11315-1, *supra,* and that the trial court was warranted in proceeding with the trial of the action.

We shall now consider the matter of the right of the state to tax the merchandise which is the subject matter of this action.

The leading case bearing upon this question is *Brown v. Maryland,* 25 U. S. 419, 6 L. Ed. 678, decided in 1827, the opinion of the court having been written by Chief Justice Marshall. While the facts of that case differ materially from those in the case at bar, certain principles of law were declared which have since been followed.

In the case cited, it appears that Brown was indicted before the city court at Baltimore for an alleged violation of a statute of the state of Maryland requiring payment of a license fee by all importers of foreign merchandise, who were required to take out a license before they were authorized to sell any of the imported merchandise, under penalty

of a forfeiture of the amount of the license tax, together with a fine of one hundred dollars. The defendants having demurred to the indictment, judgment was rendered against them in the city court, which judgment was affirmed by the court of appeals, whereupon the cause was brought before the supreme court of the United States by writ of error.

In the opinion, the cause of action is explained as follows (p. 442):

"This indictment is against the importer, for selling a package of dry goods, in the form in which it was imported, without a license. This state of things is changed, if he sells them, or otherwise mixes them with the general property of the state, by breaking up his packages, and travelling with them as an itinerant peddler. In the first case, the tax intercepts the import, as an import, in its way to become incorporated with the general mass of property, and denies it the privilege of becoming so incorporated, until it shall have contributed to the revenue of the state. It denies to the importer the right of using the privilege which he has purchased from the United States, until he shall have also purchased it from the state. In the last cases, the tax finds the article already incorporated with the mass of property, by the act of the importer. He has used the privilege he had purchased, and has himself mixed them up with the common mass, and the law may treat them as it finds them."

It may be said that the following quotation from the opinion has become a classic (p. 441):

"The constitutional prohibition on the states to lay a duty on imports, a prohibition which a vast majority of them must feel an interest in preserving, may certainly come in conflict with their acknowledged power to tax persons and property within their territory. The power, and the restriction on it, though quite distinguishable, when they do not approach each other, may yet, when the intervening colors between white and black, approach so nearly, as to perplex the understanding, as colors perplex the vision, in marking the distinction between them. Yet the distinction exists, and must be marked as the cases arise. Until they do arise, it might be premature to state any rule as being universal in its application. It is sufficient for the present to say, generally, that when the importer has so acted upon the thing imported, that it has become incorporated and

mixed up with the mass of property in the country, it has, perhaps lost its distinctive character as an import, and has become subject to the taxing power of the state; but while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported, a tax upon it is too plainly a duty on imports, to escape the prohibition in the constitution."

The opinion concludes as follows (p. 449):

"We think there is error in the judgment of the court of appeals of the state of Maryland, in affirming the judgment of the Baltimore city court, because the act of the legislature of Maryland, imposing the penalty for which the said judgment is rendered, is repugnant to the constitution of the United States, and, consequently, void. The judgment is to be reversed, and the cause remanded to that court, with instructions to enter judgment in favor of the appellants."

By this decision, the supreme court of the United States established the doctrine of "the original package," which has been frequently considered by our courts, both Federal and state.

In the case at bar, respondent was careful to leave the imported merchandise in the original packages, the contents of each package awaiting use in the course of the manufacture of respondent's products. As alleged in the complaint, respondent was also careful to cause to be entered upon the original assessment list respondent's claim that the property was exempt by reason of its status as an import.

In the "license cases," *Thurlow v. Massachusetts, Fletcher v. Rhode Island,* and *Peirce v. New Hampshire,* 46 U. S. 504, 12 L. Ed. 256, six of the seven judges who participated in the decision wrote separate opinions. The cases involved state laws providing for the payment of license fees by dealers in spirituous liquors. Chief Justice Taney (with whom concurred Justice Nelson), referring to the case of *Brown v. Maryland, supra,* said (p. 575):

"I argued the case in behalf of the State, and endeavoured to maintain that the law of Maryland, which required the importer as well as other dealers to take out a license before he could sell, and for which he was to pay a certain sum to the State, was valid and constitutional; and certainly I

at that time persuaded myself that I was right, and thought the decision of the court restricted the powers of the State more than a sound construction of the constitution of the United States would warrant. But further and more mature reflection has convinced me that the rule laid down by the Supreme Court is a just and safe one, and perhaps the best that could have been adopted for preserving the right of the United States on the one hand, and of the States on the other, and preventing collision between them. The question, I have already said, was a very difficult one for the judicial mind. In the nature of things, the line of division is in some degree vague and indefinite, and I do not see how it could be drawn more accurately and correctly, or more in harmony with the obvious intention and object of this provision in the constitution. Indeed, goods imported, while they remain in the hands of the importer, in the form and shape in which they were brought into the country, can in no just sense be regarded as a part of that mass of property in the State usually taxed for the support of the State government."

Later in the opinion is found the following (p. 575):

"Undoubtedly a State may impose a tax upon its citizens in proportion to the amount they are respectively worth; and the importing merchant is liable to this assessment like any other citizen, and is chargeable according to the amount of his property, whether it consists of money engaged in trade, or of imported goods which he proposes to sell, or any other property of which he is the owner. But a tax of this description stands upon a very different footing from a tax on the thing imported, while it remains a part of foreign commerce, and is not introduced into the general mass of property in the State."

The court held that the state laws in question were not inconsistent with the constitution of the United States or acts of Congress.

In the case of *Low v. Austin*, 80 U. S. 29, 20 L. Ed. 517, on writ of error to the supreme court of California, it appeared that pursuant to a state statute providing that "all property of every kind, name, and nature whatsoever within the state" should be subject to taxation according to its value, taxes were levied against wines imported by the plaintiffs from France. The defendant, the tax collector,

levied upon the merchandise, whereupon the plaintiffs paid the taxes under protest and sued to recover the money paid. The trial court entered judgment in favor of the plaintiffs, which judgment was reversed on appeal by the supreme court of the state, whereupon the case was brought before the supreme court of the United States. The opinion of the supreme court of California was reversed, without dissent. The opinion of the court in the case of *Brown v. Maryland* was considered, and concerning that case, the court said (p. 33):

"The reasons advanced by the Chief Justice not only commend themselves, by their intrinsic force, to all minds, but they have received recognition and approval by this court in repeated instances."

The court then considered the opinion of Chief Justice Taney in the license cases, *supra,* quoting from that opinion at some length. Concerning the case then before the court, the opinion continues (p. 34):

"The Supreme Court of California appears, from its opinion, to have considered the present case as excepted from the rule laid down in *Brown v. The State of Maryland,* because the tax levied is not directly upon imports as such, and consequently the goods imported are not subjected to any burden as a class, but only are included as part of the whole property of its citizens which is subjected equally to an *ad valorem* tax. But the obvious answer to this position is found in the fact, which is, in substance, expressed in the citations made from the opinions of Marshall and Taney, that the goods imported do not lose their character as imports, and become incorporated into the mass of property of the State, until they have passed from the control of the importer or been broken up by him from their original cases. Whilst retaining their character as imports, a tax upon them, in any shape, is within the constitutional prohibition. The question is not as to the extent of the tax, or its equality with respect to taxes on other property, but as to the power of the State to levy any tax. If, at any point of time between the arrival of the goods in port and their breakage from the original cases, or sale by the importer, they become subject to State taxation, the extent and the character of the tax are mere matters of legislative discretion.

"There are provisions in the Constitution which prevent one State from discriminating injuriously against the products of other States, or the rights of their citizens, in the imposition of taxes, but where a State, except in such cases, has the power to tax, there is no authority in this court, nor in the United States, to control its action, however unreasonable or oppressive. The power of the State, except in such cases, is absolute and supreme.

"The argument for the tax on the wines in the present case, that it is not greater than the tax upon other property of the same value held by citizens of the State, would justify a like tax upon securities of the United States, in which form probably a large amount of the property of some of her citizens consists; yet it has been repeatedly held that such securities are exempted from State taxation, whether the tax be imposed directly upon them by name or upon them as forming a part in the aggregate of the property of the taxpayer. The rule is general that whenever taxation by a State is forbidden, or would interfere with the full exercise of a power vested in the government of the United States over the same subject, it cannot be imposed. Imports, therefore, whilst retaining their distinctive character as such, must be treated as being without the jurisdiction of the taxing power of the State."

The supreme court of the United States, by the unanimous opinion last referred to, expressly reaffirmed the case of *Brown v. Maryland,* and approved the reasoning of Chief Justice Taney in the license cases.

In the case of *May v. New Orleans,* 178 U. S. 496, 44 L. Ed. 1165, 20 S. Ct. 976, Justice Harlan delivered the opinion of the court (the chief justice and three justices dissenting). The plaintiffs sued to prevent the enforcement of certain tax assessments made by the city of New Orleans, the plaintiffs alleging that they were engaged in importing for sale foreign goods, and that the city of New Orleans assessed them for the year 1897 as for merchandise, stock in trade, etc., and that such assessments were void because the merchandise consisted of dry goods imported by plaintiffs from foreign countries, which were sold by plaintiffs only in unbroken original packages as imported. It appeared that the goods were imported in packing cases or bales, in which separate parcels or bundles were placed by the foreign

seller, and that upon taking possession of these cases or bales the plaintiffs opened them for the purpose of sorting, delivering to purchasers, or selling the separate parcels or bundles. It was held that by opening the container in which the goods were actually imported the goods lost their distinctive character as imports, and became part of the general mass of the property of Louisiana and subject to local taxation as other property in the state. The court considered and quoted from the case of *Brown v. Maryland, supra,* saying (p. 507):

"These extracts from the opinion in *Brown v. Maryland* establish the following propositions:

"1. That the payment of duties to the United States gives the right to sell the thing imported, and that such right *to sell* cannot be forbidden or impaired by a State.

"2. That a tax upon the thing imported during the time it retains its character as an import and remains the property of the importer, 'in his warehouse, in the original form or package in which it was imported,' is a duty on imports within the meaning of the Constitution; and

"3. That a State cannot, in the form of a license or otherwise, tax the right of the importer *to sell,* but when the importer has *so acted upon* the goods imported that they have become incorporated or mixed with the general mass of property in the State, such goods have then lost their distinctive character *as imports,* and have become from that time subject to state taxation, not because they are the products of other countries, but because they are property within the State in like condition with other property that should contribute, in the way of taxation, to the support of the government which protects the owner in his person and estate."

At an earlier point in the opinion, the court said (p. 501):

"If the goods of the plaintiffs were assessed for taxation before they had ceased to be imports, that is, while in the original packages and before they had, by the act of the importer, become incorporated into the mass of property of the State and were held for use or sale, then the assessment was void under the provision of the Constitution of the United States declaring that no State shall, without the consent of Congress, lay any imposts or duties on imports or exports except those absolutely necessary for executing its inspec-

tion laws, as well as under the provision giving Congress power to regulate commerce with foreign nations. Art 1, §§ 8, 10. Of the correctness of this general proposition, as sustained by the adjudged cases, no doubt is entertained."

The court held that, upon the facts presented, the "original package" was the box or case in which the goods imported were shipped, and that, when that container was opened for the sale or delivery of the separate parcels contained in it, each of such parcels lost its distinctive character as an import and became property subject to taxation by the state as other like property. It was held that the assessment under attack was not in violation of the constitution of the United States.

The distinction between merchandise which has lost its status as an import and merchandise which has not lost that status is illustrated by two decisions of this court. In the case of *Booth Fisheries Corp. v. Case,* 182 Wash. 392, 47 P. (2d) 834, this court said:

"That fish caught in the Pacific ocean beyond the territorial limits of the state are imports, when brought into the state, is not open to question. [Citing cases.] So long as the imported article does not become commingled with the mass of property in the state, it is exempt from taxation by the state. [Citing *Brown v. Maryland, supra.*]"

In the later case of *Fishermen's Cooperative Ass'n v. State,* 198 Wash. 413, 88 P. (2d) 593, 92 P. (2d) 202, we held that one engaged in the business of fishing outside the territorial waters of the state of Washington was liable to the state occupation tax, it appearing that the fish caught were processed within the state, and thereby lost their status as imports. In the course of the opinion, we said:

"Clearly, as to all of the fish except those sold to buyers outside the state of Washington (which sales constituted transactions in interstate commerce), such fish lost their distinctive character as imports and became taxable by the state."

In the *May* case, *supra,* the supreme court of the United States held that the goods were subject to assessments levied by the city of New Orleans, because the goods had been removed from the original packages in which they

were imported, the original packages consisting of the packing cases or bales in which the goods were shipped and landed.

If the importer of merchandise sells the same, it becomes in the hands of the vendee part of the general property of the state, even though it remains in the original package. In the case of *Waring v. The Mayor*, 75 U. S. 110, 122, 19 L. Ed. 342, the court said:

"But the sales of the goods imported in this case were made by the shippers or consignees, and the complainant was the purchaser, and not the first vendor of the imported merchandise, and it is settled law in this court that merchandise in the original packages once sold by the importer is taxable as other property."

This principle was recently recognized by the supreme court of New Mexico in the case of *Tres Ritos Ranch Co. v. Abbott*, 44 N. M. 556, 105 P. (2d) 1070, 130 A. L. R. 963. It appeared that cattle which had been imported from Mexico and were being held for fattening on a ranch which had been designated by the treasury department as a bonded warehouse, were sought to be subjected to a state tax. For several reasons the court held the cattle subject to the tax. Upon one point the court said:

"After the cattle had been brought over from Mexico and even before they reached the ranch of the petitioner, they were sold to the latter by the Mexico Corporation. Immediately upon such sale, under the rule laid down by the courts, the imported cattle were incorporated into and mixed up with the mass of the property of the country and state. . . . The rule is well summarized in the North Carolina case [*Wynne v. Wright*, 18 N. C. 19, 23], as follows:

" 'Exemption from taxation continues only until the first wholesale disposition of [the articles]. After such disposition . . . they cease to be imports . . . within the meaning of the Constitution. They then become the subjects of state taxation, in all its modifications, either on the value or on the sale, as other property may be taxed.' "

There are, then, three situations in which imported merchandise may be taxed by the state: (1) When the merchandise is no longer in the original package; (2) when

the importer has so acted upon the property that it has lost its character as an import and has become a part of the general mass of property in the state; and (3) when the merchandise has been sold by the original importer to a purchaser, even though the merchandise in the hands of the purchaser remains in the original package.

■ The property which is the subject matter of this action cannot be placed in any one of the three classifications above referred to. The merchandise was imported by respondent into the United States from a foreign country. At the date of the filing of the complaint, it was still in the identical containers in which it was shipped and received. It was in exactly the same condition as when shipped, and had not been acted upon or processed in any way, nor had title passed from the importer.

Appellants argue that this court should, in the case at bar, follow the rule which has been laid down in cases arising under the interstate commerce clause of the Federal constitution and statutes enacted by Congress pursuant thereto. The general rule governing the taxation of merchandise which has moved in interstate commerce is that, as soon as the property ceases to be actually moving in such commerce and has come finally to rest at any given point, it is subject to taxation in the state where it has so come to rest.

In the case of *Brown v. Maryland, supra,* near the end of the opinion appears the following:

"It may be proper to add, that we suppose the principles laid down in this case, to apply equally to importations from a sister state. We do not mean to give any opinion on a tax discriminating between foreign and domestic articles."

In the case of *Woodruff v. Parham,* 75 U. S. 123, 139, 19 L. Ed. 382, the court re-examined the proposition, saying:

"The casual remark, therefore, made in the close of the opinion, 'that we suppose the principles laid down in this case to apply equally to importations from a sister State,' can only be received as an intimation of what they might decide if the case ever came before them, for no such case was then to be decided. It is not, therefore, a judicial decision of the question, even if the remark was intended to

apply to the first of the grounds on which that decision was placed."

The court then proceeded to hold that the term "imports" does not include merchandise shipped from one state into another.

The distinction between imports and goods moving in interstate commerce was restated in the case of *American Steel & Wire Co. v. Speed,* 192 U. S. 500, 48 L. Ed. 538, 24 S. Ct. 365, where the court said (p. 519):

"Assuming that the goods concerning which the state taxes in this case were levied were in the original packages and had not been sold, if the bringing of the goods into Tennessee from another State constituted an importation, in the constitutional signification of that word, it is clear they could not be directly or indirectly taxed. But the goods not having been brought from abroad, they were not imported in the legal sense and were subject to state taxation after they had reached their destination and whilst held in the State for sale. This is as conclusively foreclosed by the decisions of this court as is the doctrine resting upon the decision in *Brown v. Maryland. Woodruff v. Parham,* 8 Wall. 123; *Brown v. Houston,* 114 U. S. 622. The doctrine upon which the cases rest was this, that imports, in the constitutional sense, embraces only goods brought from a foreign country, and consequently does not include merchandise shipped from one State to another. The several States, therefore, not being controlled as to such merchandise by the prohibition against the taxation of imports, it was held that the States had the power, after the goods had reached their destination and were held for sale, to tax them, without discrimination, like other property situated within the State."

In the case of *Bacon v. Illinois,* 227 U. S. 504, 57 L. Ed. 615, 33 S. Ct. 299, the court held that certain grain was subject to taxation in the state of Illinois, saying (p. 515):

"But neither the fact that the grain had come from outside the State nor the intention of the owner to send it to another State and there to dispose of it can be deemed controlling when the taxing power of the state of Illinois is concerned. The property was held by the plaintiff in error in Chicago for his own purposes and with full power of disposition. It was not being actually transported and it

was not held by carriers for transportation. The plaintiff in error had withdrawn it from the carriers. The purpose of the withdrawal did not alter the fact that it had ceased to be transported and had been placed in his hands. He had the privilege of continuing the transportation under the shipping contracts, but of this he might avail himself or not as he chose. He might sell the grain in Illinois or forward it as he saw fit. It was in his possession with the control of absolute ownership. He intended to forward the grain after it had been inspected, graded, etc., but this intention, while the grain remained in his keeping and before it had been actually committed to the carriers for transportation, did not make it immune from local taxation. He had established a local facility in Chicago for his own benefit and while, through its employment, the grain was there at rest, there was no reason why it should not be included with his other property within the State in an assessment for taxation which was made in the usual way without discrimination."

In the case of *Minnesota v. Blasius,* 290 U. S. 1, 78 L. Ed. 131, 54 S. Ct. 34, the rule was concisely stated as follows (p. 10):

"Where property has come to rest within a State, being held there at the pleasure of the owner, for disposal or use, so that he may dispose of it either within the State, or for shipment elsewhere, as his interest dictates, it is deemed to be a part of the general mass of property within the State and is thus subject to its taxing power."

The supreme court having held that merchandise moving in interstate commerce is not an import, the clauses of the Federal constitution prohibiting the states from taxing imports do not apply. The supreme court has clearly pointed out the distinction between imports and property moving in interstate commerce. Decided cases which concern the latter class of property are not in point when the status of merchandise which is unquestionably an import is to be determined.

Appellants rely upon the case of *Hooven & Allison Co. v. Evatt,* 142 Ohio St. 235, 51 N. E. (2d) 723. This case, recently decided by the supreme court of Ohio, contains dicta which appellants suggest be followed by this court in

the case at bar. The plaintiff was a manufacturer of rope and twine, using raw materials imported from various foreign nations. When the merchandise imported reached plaintiff's manufacturing plant, it was stored in plaintiff's warehouse, to be used in its manufacturing processes as wanted. None of the merchandise was resold or exposed for sale.

It appeared that the merchandise of the class in question was carried to the port of entry in this country at the seller's risk, with title in the seller, where the title remained until the goods were paid for by plaintiff, beyond question in the United States. Title to the merchandise therefore passed to the plaintiff in the United States, and the basis of the decision that the goods were taxable in Ohio was that the plaintiff was not an importer because the merchandise had been sold to it in this country by the seller. As above stated, it is the rule that the immunity from state taxation which attaches to imports is lost when the goods are sold within the United States by the importer.

It is alleged in the complaint in this action that the cocoa beans were imported by respondent into the United States from foreign nations. This allegation is admitted by the demurrer.

In the course of its opinion, the supreme court of Ohio said:

"Assuming that appellant was the importer, these goods had so come to rest as to be mingled with the mass of property in this country when the state tax was levied thereon. This tax could not have the effect of intercepting the import nor did it deny to the import the privilege of becoming incorporated in the general mass of local property unless such tax payment was made."

The statement quoted was not necessary to the decision of the case, is mere dicta, and should not be followed in the case at bar.

The case of *American Mfg. Co. v. St. Louis*, 238 Mo. 267, 142 S. W. 297, is in point here. The action was brought to recover taxes paid by the plaintiff to the defendant, levied by the city pursuant to a revenue ordinance providing for

the collection of *ad valorem* taxes on the value of goods, wares, and merchandise situated within the city limits. Plaintiff corporation operated a factory in the city of St. Louis, for the purpose of manufacturing bagging. The portion of the tax levied by the city was assessed against imported jute butts in original packages imported by the plaintiff for use in its manufacturing processes. Plaintiff contended that these jute butts were, as imports, immune from taxation. Other items of merchandise which plaintiff contended were not proper subjects of taxation were also assessed. The court first discussed the question of the validity of the tax levied against the jute butts. Upon this point the court said:

"In the case at bar, the jute butts were imported for use in manufacturing purposes, and we can see no reason why a tax levied on such property before its manufacture into bagging and while it remains in the original packages would not discourage importation thereof to the same extent as a tax levied upon a sale in the original package."

The judgment of the trial court was reversed, and the cause remanded for a new trial. By a *per curiam* opinion (which follows immediately after the opinion in the case), the trial court was directed to enter judgment in favor of the plaintiff for the amount paid on account of taxes levied and collected on the imported jute butts, so that question was finally determined by the court in the plaintiff's favor, and the tax levied by the city against the imports was held invalid.

We find no reason or authority for distinguishing between imports intended for sale and those intended for use by the importer in some manufacturing process. In the case at bar, there is no suggestion of bad faith or any attempt to evade the law on the part of respondent. Respondent is engaged in the manufacture of chocolate and cocoa from cocoa beans, and cannot be penalized because it imported a large quantity of the raw material which was the chief ingredient of its manufactured products. The complaint negatives any suggestion that the merchandise was imported for speculation.

The doctrine that while remaining in the original package in which it was imported the merchandise is exempt from taxation has the advantage of certainty, and, pursuant to the opinions of the supreme court, may be easily applied in any case of admitted or proven facts. If in any case it should appear that unlawful advantage were being sought under the doctrine referred to, such a question could be submitted for decision under proper pleadings. No such question is here presented.

Following the unbroken line of authorities, commencing with the case of *Brown v. Maryland,* with emphasis upon the case of *Low v. Austin,* we hold that the trial court correctly decided that the merchandise in question is exempt from *ad valorem* taxation by the state of Washington, and that under its complaint respondent is entitled to maintain this action.

The judgment appealed from is affirmed.

SIMPSON, C. J., JEFFERS and GRADY, JJ., concur.

MILLARD, J. (concurring)—I concur, but desire now to state that I erroneously signed opinion in *Casco Co. v. Thurston County,* 163 Wash. 666, 2 P. (2d) 677, 77 A. L. R. 622, which should be overruled. We there held valid a legislative restriction of a court's inherent powers.

STEINERT, J. (dissenting)—I dissent, upon the ground that, at the time the merchandise here in question was assessed for taxation, the property had lost its original character of a foreign import and had become a part of the general mass of property situated within the state, and as such was subject to taxation upon the same basis as similar property which had its origin within this country.

It appears from the complaint of the respondent that

"Upon arrival in Seattle, the cocoa beans are stored by plaintiff either at its plant at 528 Pontius Avenue, Seattle, or at the warehouse of Commercial Warehouse Co. at 112 Alaska Way, Seattle, where they remain until used in plaintiff's [respondent's] manufacturing business."

It thus appears from the complaint itself that at the time here involved the merchandise was no longer in transit,

but had come permanently to rest and, further, that the merchandise was then being held for use by respondent in its manufacturing business. In other words, the cocoa beans were as much a part of respondent's general supplies as were any other materials on hand for use in manufacturing respondent's products. The situation is analogous to that which obtained in the case of *Spaulding v. Adams County,* 79 Wash. 193, 140 Pac. 367, wherein a manufacturer shipped several carloads of buggies from Grinnell, Iowa, to Ritzville in this state and there stored them in a warehouse until they were sold. Upon the arrival of the shipments in Ritzville, the corporate authorities of the county caused them to be valued for assessment purposes and to be taxed in such valuations. The manufacturer brought an action against the county to recover the amount of taxes paid by it and contended, among other things, that the goods were still in transit, or at least had not become a part of the mass of property within the county. Disposing of that contention, this court said:

"The property had reached its destination. It had come to its place of rest for final disposal and use, and was to remain there until finally disposed of by the owner. As such, we think it constituted a part of the mass of the general property of the county, even while on the cars, and was thus subject to taxation under the provision of the statute quoted, since it was the intention of the owners to take it to a place of business to be temporarily occupied for its sale."

If property brought into this state and stored in a warehouse for subsequent sale by the owner is subject to taxation by the state, it would seem that property brought into the state and held by the owner for use in its own manufacturing business would for at least equal reason be also subject to state taxation.

The majority opinion holds that the property is immune from general taxation solely upon the "original package" doctrine evolved in *Brown v. Maryland,* 25 U. S. 419, 6 L. Ed. 678, and reiterated in a number of cases cited in the majority opinion. That doctrine, as expounded in the

*Brown* case, is that, so long as the thing imported remains the property of the importer in his warehouse, *in the original form or package in which it was imported,* a tax upon it is a duty or impost violative of Art. I, § 10, clause 2, of the Federal constitution, which provides that no state shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws.

The purpose of the constitutional provision was to prevent the state from interfering with or placing a disadvantage upon commerce, either interstate or foreign, through the exercise of this state's taxing powers.

It seems to me that to apply the "original package" doctrine as the sole test of taxability of property is to make a fetish of a formula. The real test of the validity of a state tax is not whether the property sought to be taxed retains its original wrappings, but whether, in fact, the tax imposed actually restrains or interferes with commerce. It seems to me that where an article of merchandise has reached its destination, has exhausted its intended mobility, is being held by the owner for actual use in his business, just as he holds other property in the same business, and when such property is under the protection of the state laws, it ceases to be an import and becomes a part of the general mass of property within the state and as such is subject to the state's taxing power.

"Where property has come to rest within a State, being held there at the pleasure of the owner, for disposal or use, so that he may dispose of it either within the State, or for shipment elsewhere, as his interest dictates, it is deemed to be a part of the general mass of property within the State and is thus subject to its taxing power." *Minnesota v. Blasius,* 290 U. S. 1, 78 L. Ed. 131, 54 S. Ct. 34.

Without quoting from other decisions, I cite the following as authority for the view I have endeavored to express: *Baldwin v. Seelig,* 294 U. S. 511, 79 L. Ed. 1032, 55 S. Ct. 497, 101 A. L. R. 55; *McGoldrick v. Berwind-White Coal Mining Co.,* 309 U. S. 33, 84 L. Ed. 565, 60 S. Ct. 388, 128

A. L. R. 876, and cases therein cited; *Bloxom v. Henneford,* 193 Wash. 540, 76 P. (2d) 586.

I do not believe that in this case the tax imposed by the state in any true sense obstructs or hampers foreign commerce directly or indirectly or that it constitutes a burden in the sense in which the Federal constitution intended to prohibit, and hence I am of the view that the property is subject to state taxation.

BLAKE, ROBINSON, and MALLERY, JJ., concur with STEINERT, J.

