STATE BOARD OF TAX COMMISSION-
ERS, Appellant (Defendant Below),

v.

NEWS PUBLISHING COMPANY, INC.,
Appellee (Plaintiff Below).

No. 3–878A192.

Court of Appeals of Indiana,
Third District.

April 3, 1979.

Rehearing Denied May 14, 1979.

Theo. L. Sendak, Atty. Gen., David C. Weigel, Deputy Atty. Gen., Indianapolis, for appellant.

W. Paul Helmke, Jr., Fort Wayne, for appellee.

HOFFMAN, Judge.

News Publishing Company, Inc. (the Company) claimed an exemption from tangible personal property tax for certain imported goods on its 1976 tax return. The State Board of Tax Commissioners (the Board) disallowed the exemption and redetermined the assessed value of the Company's property accordingly. The Company then filed its "Complaint Against and Appeal from State Board of Tax Commissioners," seeking an order vacating the final assessment made by the Board. After discovery both parties moved for summary judgment, and the Company's motion was granted. From a judgment in favor of the Company, the Board appeals.

The property which the Company seeks to exempt from taxation is newsprint, imported from Canada, which is not required for current operational needs. The Company claimed an exemption for that property on the basis of Board of Tax Commissioners, Regulation 16, § 3.3 [Indiana Administrative Rules and Regulations (6–1.1–3–9)–32, (Burns Code Ed.)].[1] under which it had been

---

1. State Board of Tax Commissioners, Regulation 16, § 3.3 [Ind.Admin.Rules and Regs. (6–1.- 1–3–9)–32, (Burns Code Ed.)] reads, in pertinent part, as follows:

granted exemptions in previous years. The Board, however, disallowed the exemption, stating that under its interpretation of the decision in *Michelin Tire Corp. v. Wages* (1976), 423 U.S. 276, 96 S.Ct. 535, 46 L.Ed.2d 495, the exemption provided for by Regulation 16 was no longer required.

The Board had not, however attempted to amend or repeal Regulation 16; it had merely circulated a bulletin indicating that it would cease to follow the provision creating the exemption.

The court below found that the Board's action in issuing the bulletin had no effect on the operation of the regulation since the statutory procedures governing amendment and repeal of regulations had not been followed. It further found that the *Michelin* decision did not "automatically make imported goods, such as Plaintiff's [the Company's], taxable in the absence of a formal amendment of Regulation 16." In so finding, the court did not reach the question of whether imported goods could, consistent with the *Michelin* decision, be subject to an *ad valorem* tax under a properly adopted regulation. Rather, it found that Regulation 16 was still in effect and that the Company was entitled to an exemption thereunder. Consequently, the court entered judgment for the Company.

The Board now argues that Regulation 16 allowed an exemption from taxation only to the extent required by the Import-Export Clause of the U.S. Constitution. It maintains that the introductory language of Ind. Admin.Rules and Regs. (6–1.1–3–9)–32B, *supra,* when read in light of the *Michelin* decision, must be construed to deny the exemption claimed by the Company. It further argues that, although the General Assembly is empowered to exempt property from taxation by Art. 10 § 1 of the Indiana Constitution, it has not chosen to do so.

■ These arguments ignore the express language of (6–1.1–3–9)–32B(4)(c) and B(5) which specifically provides for the claimed exemption, and they therefore have no merit. The Board's contentions do, however, present the following issue which is dispositive of this case: Did the decision in *Michelin, supra,* authorize the imposition of an *ad valorem* property tax on that part of the Company's imported newsprint which had not yet been committed to use?

■ In order to properly dispose of the issue presented, this Court must examine the basis for the Board's asserted authority to impose a tax on the Company's property. The origin of the tax on personal property, and the permissible exemptions therefrom, is the mandate of the Constitution of Indiana, Art. 10, § 1:

"B. Imports—Exports. Goods which qualify for exemption as imports-exports under the Constitution of the United States are exempt from taxation for Indiana personal property tax purposes.

\*   \*   \*   \*   \*   \*

(2) Imports. Imported goods which retain their status as imports are not assessable for Indiana property tax purposes under any circumstances. To become assessable such goods must have lost their status as imports. There are two types of imports as used in this regulation:
(a) Imports consisting of those goods imported for sale by the importer.
(b) Imports consisting of goods imported for use by the importer.

\*   \*   \*   \*   \*   \*

(4) Goods Imported for Use by the Importer. When goods are imported for use by the importer, such goods are exempt until they are put to the use for which they are imported, at which time they lose their status as imports and become subject to the personal property tax. Goods will be deemed to lose their status as imports and be put to the use for which they were imported when they reach their ultimate destination, which is the place where the property is to be used and when they:
(a) Are mixed with other goods and lose their identification;
(b) Are incorporated with other goods;
(c) Are committed to use by the importer.
(5) Committed to Use. The term "committed to use by the importer" is herein defined as that portion of any imported goods on hand which is required for the current operational needs of the taxpayer during the time required under ordinary conditions, using the usual mode of transportation to obtain a supply of such goods so as to maintain an uninterrupted flow of the regular manufacturing process. This time period begins when the order is placed and ends upon receipt of the goods by the importer at the tax situs and may vary depending upon the time of the year when the order is placed or received."

"§ 1. Assessment and taxation.—(a) The General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal. The General Assembly may exempt from property taxation any property in any of the following classes:

(1) Property being used for municipal, education, literary, scientific, religious or charitable purposes;

(2) Tangible personal property other than property being held for sale in the ordinary course of a trade or business, property being held, used or consumed in connection with the production of income, or property being held as an investment;

(3) Intangible personal property.

(b) The General Assembly may exempt any motor vehicles, mobile homes, airplanes, boats, trailers or similar property, provided that an excise tax in lieu of the property tax is substituted therefor. [As amended November 8, 1966.]"

The plain language of this provision, specifically that in subsection (a)(2), withholds from the General Assembly the power to exempt personal property "being held, used or consumed in connection with the production of income" regardless of the place of manufacture of such property. Since there is no question that the newsprint is being held for use in the Company's business of printing newspapers for a profit, it must follow that Art. 10, § 1(a)(2) prohibits the General Assembly, or any agency to which it has delegated its authority in such matters, from exempting such property from taxation under any circumstances.

Yet Regulation 16, duly passed by the Board of Tax Commissioners (to which the General Assembly has delegated rulemaking authority) creates just such an exemption. By its terms personal property held in connection with the production of income is exempted when it has been imported for use by the importer, but is not yet required for current operational needs. Ind.Admin. Rules and Regs. (6–1.1–3–9)–32B(4)(c) and B(5), (Burns Code Ed.).

While it is clear that Regulation 16 provides for an exemption from taxation contrary to the terms of Ind.Const. Art. 10 § 1, it is equally clear that the creation of that exemption was, Art. 10 § 1 notwithstanding, required as a matter of Federal constitutional law. In the case of *Low v. Austin* (1871), 13 Wall. (80 U.S.) 29, 20 L.Ed. 517 the United States Supreme Court, in an opinion by Mr. Justice Field, held that an *ad valorem* tax imposed by a state on imported goods which had neither passed from the hands of the importer nor been broken by him from the original packages violated "the prohibition of the Constitution upon the states to lay a duty on imports." [2] 13 Wall. at 32. This construction of the Import-Export Clause (U.S.Const. Art. I § 10, cl. 2) was, by virtue of the Supremacy Clause,[3] the governing law in Indiana, despite the provisions of the Indiana Constitution. Consequently, the State of Indiana had no power to tax such imports, whether or not there existed a statute or regulation granting such an exemption.

The rule announced in *Low v. Austin, supra,* was, however, reconsidered by the Supreme Court in *Michelin Tire Company v.*

---

2. Article I, § 10 cl. 2 of the United States Constitution provides:

"No state shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws: and the net Produce of all Duties and Imposts, laid by any State on Imports or Exports, shall be for the Use of the Treasury of the United States; and all such Laws shall be subject to the Revision and Control of the Congress."

3. Article VI, cl. 2 of the United States Constitution provides:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

*Wages, supra.* In that case the court upheld a Georgia *ad valorem* property tax on imported goods held in the importer's warehouse. Mr. Justice Brennan, speaking for the court, reasoned that an *ad valorem* tax which did not discriminate against imports *as imports* did not create the evils which the Framers sought to avoid. 423 U.S. at 283–286, 96 S.Ct. 535. Thus, he concluded, an *ad valorem* tax based only upon the presence of imported goods as a part of the wealth of the state did not fall within the constitutional proscription. *Low v. Austin, supra,* insofar as it expressed a contrary view, was expressly overruled.

As discussed above, the exemption provided by Regulation 16 ran contrary to the provisions of Art. 10, § 1 of the Indiana Constitution. Further, that exemption had as its only foundation the rule in *Low v. Austin, supra,* which limited the application of Art. 10, § 1 insofar as imports were concerned. Without the support of the rule in *Low v. Austin, supra,* (which was dismantled by the U.S. Supreme Court in *Michelin*) the exemption must yield to the command of Art. 10, § 1. It follows that, after the decision in *Michelin,* neither the General Assembly nor the Board, acting under its delegated authority, had the power to exempt the Company's property from taxation.

Accordingly, the judgment below is reversed.

Reversed.

GARRARD, P. J., and STATON, J. concur.