*32
 
 Mr. Justice FIELD
 

 delivered the opinion of the court.
 

 The simple question presented in this case for our consideration is, whether imported merchandise, upon which the duties and charges at the custom-house have been paid, is subject to State taxation, whilst remaining in the original cases, unbroken and unsold, in the hands of the importer.
 

 The decision of this court in the case of
 
 Brown
 
 v.
 
 The State of Maryland
 

 *
 

 furnishes the answer to the question. The distinction between that case and the present case does not affect the principle affirmed, which equally governs both.
 

 In that case the question arose whether an act of the legislature of Maryland requiring importers of foreign goods by the bale or package, to pay the State a license tax before selling them in the form and condition in which they were imported, was valid and constitutional. The court held the act in conflict with the provision of the Constitution which declares that no State shall, without the consent of Congress, lay any impost or duty on imports or exports, except what may be absolutely necessary for executing its inspection laws.
 

 In the elaborate opinion of Mr. Chief Justice Marshall the whole subject of the power of Congress over imports is considered, and the liner marked where the power of Congress over the goods imported ends, and that of the State begins, with as much precision as the subject admits. After observing that the prohibition of the Constitution upon the States to lay a duty on imports, and their acknowledged power to tax persons and property may come in conflict, he says, speaking for the court: “The power, and the restriction on it, though quite distinguishable when they do not approach each other, may yet, like the intervening colors between white and black, approach so nearly as to perplex the understanding, as colors perplex the vision in marking the distinction between them. Yet the distinction exists, and must be marked as the cases arise. Till they do arise, it might be premature to state any rule as being universal in its application. It is sufficient for the present to say, gen
 
 *33
 
 erally, that when the importer has so acted upon the thing imported that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the State; but while remaining the property of the importer, in his warehouse, in the original form'or package in which it was imported, a tax upon it is too plainly a duty on imports to escape the prohibition in the Constitution.”
 
 *
 

 In that case it was also held that the authority given to import necessarily carried with it a right to sell the goods in the form and condition, that is, iu the bale or package, in which they were imported; and that the exaction of a license tax for permission to sell in such case was not only invalid as being in conflict with the constitutional prohibition upon the States, but also as an interference with the power of Congress to regulate commerce with foreign nations.
 

 The reasons advanced by the Chief Justice not only commend themselves, by their intrinsic force, to all minds, but they have received recognition and approval by this court in repeated instances. Mr. Chief Justice Taney, who was at the time eminent at the bar, as he was afterwards eminent on the bench, argued the case on behalf of the State of Maryland; and in the
 
 License
 
 Cases,
 
 †
 
 he referred to his position and observed that, at that time, he persuaded himself that he was right, and thought that the decision of the court restricted the powers of the State more than a sound construction of the Constitution of the United States would warrant. “But farther and more mature reflection,” the great judge added, “ has convinced me that the rule laid down by the Supreme Court is a just and safe one, and perhaps the best that could have been adopted for preserving the right of the United States on the one hand, and of the States on the other, and preventing collision between them. The question, I have already said, was a very diflicult one for the
 
 *34
 
 judicial mind. In the nature of things the line of division is, in some degree, vague and indefinite, and I do not see how it could be drawn more accurately and correctly, or more in harmony with the obvious intention and object of this provision in the Constitution. Iudeed, goods imported, while they remain in the hands of the importer, in the form and shape in which they were brought into the country,*can, iu no just sense, be regarded as a part of that mass of property in the State usually taxed for the support of the State government.”
 
 *
 

 The Supreme Court of California appears, from its opinion, to have considered the present case as excepted from the rule laid down in
 
 Brown
 
 v.
 
 The State of
 
 Maryland, because the tax levied is not directly upon imports as such, and consequently the goods imported are not subjected to any burden as a class, but only are included as part of the whole property of its citizens which is subjected equally to an
 
 ad valorem
 
 tax. But the obvious answer to this position is found in the fact, which is, in substance, expressed in the citations made from the opinions of Marshall and Taney, that the goods imported do not lose their character as imports, and become incorporated into the mass of property of the State, until they have passed from the control of the importer or been broken up by him from their original cases. Whilst retaining their character as imports, a tax upon them, in any shape, is within the constitutional prohibition. The question is not as to the extent of the tax, or its equality with respect to taxes on other property, but as to the power of the State to levy any tax. If, at any point of time between the arrival of the goods in port and their breakage from the original cases, or sale by the importer, they become subject to State taxation, the extent and the character of the tax are mere matters of legislative discretion.
 

 There are provisions iu the Constitution which prevent
 
 *35
 
 one State from discriminating injuriously against the products of other States; or the rights of. their citizens, in the imposition of taxes, but where a State, except in such cases, has the power to tax, there is no authority in this court, nor in the United States, to control its action, however unreasonable or oppressive. The power of the State, except in such cases, is absolute and supreme.
 
 *
 

 The argument for the tax on the wines in the present case, that it is not greater than the tax upon other property of the same value held by citizens of the State, would justify a like tax upon securities of the United States, in which form probably a large amount of the property of some of her citizens consists; yet it has been repeatedly held that such securities are exempted from State taxation, whether the tax be imposed directly upon them by name or upon them as forming a part in the aggregate of the property of the taxpayer.
 
 †
 
 The rule is general that whenever taxation by a State is forbidden, or would interfere with the full exercise of a power vested in the government of the United States over the same subject, it cannot be imposed. Imports, therefore, whilst retaining their distinctive character as such, must be treated as being without the jurisdiction of the taxing power of the State.
 

 It follows that the judgment of the Supreme Court of California must be
 

 Reversed.
 

 *
 

 12 Wheaton, 419.
 

 *
 

 12 Wheaton, 441.
 

 †
 

 5 Howard, 575.
 

 *
 

 See also Almy
 
 v.
 
 The State of California, 24 Howard, 169; Woodruff
 
 v.
 
 Parham, 8 Wallace, 128; Hinson
 
 v.
 
 Lott, Ib. 148.
 

 *
 

 Woodruff
 
 v.
 
 Parham, 8 Wallace, 123; Hinson
 
 v.
 
 Lott, Ib. 148.
 

 †
 

 Bank of Commerce
 
 v.
 
 New York City, 2 Black, 620.