[Civ. No. 3356. First Appellate District, Division Two.—May 22, 1920.]

THE IMPERIAL DEVELOPMENT COMPANY (a Corporation), Appellant, v. THE CITY OF CALEXICO et al., Respondents.

[1] TAXATION — COTTON IMPORTED FROM MEXICO — RETENTION AND STORAGE BY IMPORTER IN ORIGINAL BALES — NONLIABILITY FOR STATE AND LOCAL TAXES.—Cotton and bollies in flat bales imported into the United States from the republic of Mexico are not subject to state or local taxation so long as they remain the property of the importer and are contained in the unbroken original form or bales in which they were imported, it being immaterial that the bales are stored in various places in a warehouse in which homegrown cotton is also stored, that they were imported duty free, and that the form in which they were imported is not suitable for long transportation, it being necessary to compress the bales into more compact form for that purpose before delivering the same to the railroad for transportation.

[2] ID.—ACTION TO TEST VALIDITY OF TAX LEVIED—SUBMISSION ON AGREED STATEMENT OF FACTS — RELIEF AUTHORIZED.—Where an action to test the validity of a tax levied on such cotton and bollies is submitted on an agreed statement of facts which contains conflicting statements as to the status of the property, it being stated in one place that plaintiff demanded of defendants the delivery of

said property but that they refused, and now refuse, to deliver the same unless the tax is first paid, which plaintiff refused and refuses to do, and in another that the taxes were paid under protest, the trial court, under plaintiff's prayer for general relief, has power to do full justice between the parties in disposing of the litigation by directing a return of the property held, or of the money collected by the assessor, as the facts may warrant, and is not limited to granting plaintiff's specific prayer that the tax be declared invalid.

APPEAL from a judgment of the Superior Court of Imperial County. Franklin J. Cole, Judge. Reversed.

The facts are stated in the opinion of the court.

Louis Lamy for Appellant.

M. C. Atchison, City Attorney, and Alfred Blaisdell for Respondent.

J. W. Hocker, *Amicus Curiae,* for Respondent.

LANGDON, P. J.—This is an appeal by the plaintiff from a judgment against it in an action to have certain taxes assessed against its property declared void, and for general relief. The trial was had upon an agreed statement of facts as follows:

"That at all times mentioned or referred to in plaintiff's amended complaint herein, the plaintiff was, and now is, a corporation duly formed and existing under the laws of the Republic of Mexico, duly qualified and entitled to do business in the State of California, and having a branch office and place of business in the City of Calexico, in the County of Imperial and State of California.

"That the defendant City of Calexico is a municipal corporation of the Sixth Class in said state.

"That the defendant Paul B. Steintorf is, and at all times mentioned or referred to in said amended complaint was, the duly elected, qualified and acting Assessor of said City of Calexico.

"That the plaintiff at all said times and at noon of March 4th, 1918, was the owner of, in the possession and entitled to the possession at and in said City of Calexico, County and State aforesaid, of 349 bales of cotton, and 14 bales of bol-

lies; said cotton being of the value of to-wit $63,000.00, and said bollies being of the value of, to-wit: $2,000.00, at all the times mentioned or referred to in said amended complaint.

"That said cotton and bollies were owned and imported by plaintiff from said Republic of Mexico, and were duly entered through the port of Calexico aforesaid, after the payment by plaintiff of all the duties imposed by law; that said cotton and bollies were contained in unbroken original packages, to-wit: in flat bales as same came from the gin; and immediately after the entry of the same at said port, said merchandise was placed, for storage, in the Calexico Compress Company's yards at Calexico aforesaid, where it remained the property of plaintiff in the original forms and packages in which it was imported.

"That said cotton was not stored in any one place, or in one particular portion of said Compress Company's building or yards, but was scattered in different portions of said yards in different amounts in which it was brought in on different occasions. That although marked for identification, it was scattered here and there with the general mass of cotton stored in said yards; that said Calexico Compress Company had stored with it, and was storing thousands of bales of cotton owned by divers and many persons, much of which was produced in the United States; that plaintiff at different times since the said 4th day of March, 1918, and after payment by it under protest of the taxes levied and assessed against said cotton has sold and offered for sale portions of said cotton; that said cotton at the time of the assessment herein was not in transit, or in the possession of any railroad company for transit, but was being held indefinitely, subject to storage charges and sales; that there is no difference in the manner of storing and handling cotton of the plaintiff from the manner of storing and handling cotton of other producers storing cotton in said yards which last cotton has been raised and produced in the state of California.

"That said Calexico Compress Company is a public service corporation of the State of California, which offers, among other things, to the cotton growers, including this plaintiff, facilities for storing, compressing, exposing for sale, selling, transporting, shipping, and the general handling of cotton.

"That cotton as it comes from the gin in 'flat' bales is not in a suitable condition for shipping or transportation, except between points where the distances are very short, but before said cotton is shipped any long distance, it is the custom to compress said bales into a more compact form by the Calexico Compress Company, before delivering same to the railroad for transportation.

"That while said imported property was so owned and possessed by plaintiff as aforesaid, and in the condition stated in this stipulation, on to-wit: March 4th, 1918, the defendants levied an assessment and tax upon the same, of $1.12 per bale for said cotton, and of ninety cents per bale for said bollies.

"That plaintiff demanded of defendants the delivery of said imported property, but defendants always refused to deliver the same, and now refuse unless the taxes so levied and assessed against said property, were and are first paid, which plaintiff refused and refuses to do."

[1] These facts, we think, make the present case closely analogous to the case of *Low* v. *Austin*, 13 Wall. 29, [20 L. Ed. 517]. This was a California case which was carried to the United States supreme court on a writ of error, the contention there being the same as the contention here, i. e., that goods imported from a foreign country are not subject to state taxation while remaining in the original packages, unbroken and unsold in the hands of the importer, whether the tax be imposed upon the goods as imports, or upon the goods as part of the general property of the citizens of the state which is subject to an *ad valorem* tax.

In the present case, the respondent contends, as was done in the Low case, that the goods have become a part of the general property of the state and are subject to *ad valorem* taxes; that they are stored with goods grown in the United States, and therefore have become mingled with such goods and are subject to the same taxes, etc. Almost precisely the same arguments appear in the decision of the state court in the Low case, a considerable portion of which decision is set out in the opinion of the supreme court of the United States, at pages 30 and 31 thereof. But these contentions were held to be unsound by the highest court in the land. In said case of *Low* v. *Austin, supra,* the plaintiff had imported wines from France, which he had placed in his ware-

house at San Francisco in the original cases, and had offered them for sale. While in the warehouse the wines were assessed for state, city, and county taxes. Low refused to pay the tax and the collector levied upon the wines and was about to sell them, when Low paid the charges under protest, and brought an action to recover the amount so paid. The opinion of Mr. Justice Field in that case seems to us to answer all the contentions of the respondent here. It is based upon the well-known case of *Brown* v. *Maryland,* 12 Wheat. 419, [6 L. Ed. 678, see, also, Rose's U. S. Notes], and reasserts the doctrine of that case that goods imported do not lose their character as imports and become incorporated into the mass of property of the state until they have passed out of the hands of the importer, or until they have been removed by said importer from the original packages in which they were imported.

It is admitted by the stipulation as to facts that the goods were in their original bales. Respondents seek to distinguish flat bales from other varieties of bales, and urge upon our attention that flat bales are not a suitable arrangement for long transportation. This seems to us quite immaterial. The pertinent fact is that the goods were in the bales in which they were imported. When the importer seeks to convey the goods any considerable distance, he will be obliged to change the original packages, and then become liable to state taxes.

Respondents seek aid from the admitted fact that the cotton was not all stored in one portion of the warehouse, and that it was stored in a warehouse in which home-grown cotton was also stored, and, further, that it was assembled and stored at different dates. The relevancy of these matters is not apparent to us. If the rule would be applicable to 349 bales of cotton, considered as one lot, it would be applicable to one bale. Therefore, if each bale was stored in a different warehouse, or in a different part of the same warehouse, and if each bale had been brought to the warehouse at a different time, the principle would be none the less applicable, for it is admitted that the goods were marked for identification and were in the original bales. Under such circumstances it could not become so mingled with the other goods stored in the warehouse as to lose its character as an import while it continued to be the property of the

importer.  In the case of *Low* v. *Austin, supra,* the state court assumed in its opinion that the imported wines might be stored with wines of home manufacture, which would be sold in the same kind of container, but the United States court held that, nevertheless, the goods, so long as contained in the original packages and remaining in the hands of the importer, were beyond the taxing power of the state.  (See, also, *Brown* v. *Maryland, supra; Waring* v. *Mayor,* 8 Wall. 110, 122, [19 L. Ed. 342, see, also, Rose's U. S. Notes].)

The respondents ask us to take judicial notice that no duties were paid to the United States on the cotton, as it is one of the articles upon the "free list," and they argue that since no duties were exacted by the United States, the state has power to tax.  We cannot agree with the respondents that this fact changes the principle involved.  We have been cited to no case involving this particular point; but it would seem reasonable that if the permission of the United States to import articles into the country, granted upon the payment of a tax, means immunity from state taxation under certain conditions, that permission to import goods is equally as efficacious when it is given without the payment of a special tax or duty.  The duties upon imported articles are fixed in larger or smaller amounts, or are removed entirely, according to the policy adopted by the government for the best interests of the country, and the fact that the policy may vary in the case of different articles and at different times, should not affect the principle applied to imported goods.  We think goods are no less imported goods when the government permits them to be imported without exacting a duty for that privilege, than when the government imposes a heavy charge upon the privilege of importation.

[2]  This disposes of the only question raised by the briefs which goes to the merits.  The respondents interpose numerous technical objections.  They argue that because the statement of facts shows that the plaintiffs paid the taxes under protest, that, therefore, the goods are no longer held by the collector, and the question of whether the tax is illegal or not has become a moot question in this action, and that the plaintiff must bring another action to recover its money.  Plaintiff has asked for general relief.  It is entitled to such relief as the facts shown at the trial will war-

rant. The court has power to do full justice between the parties in disposing of this litigation. The determination of the validity of the tax sought to be levied is but the determination of the foundation of plaintiff's relief. If the facts had shown that the tax had not been paid, the court should have declared the tax illegal and ordered a return of the cotton, or the portion of the cotton, if any, held by the assessor. The stipulation as to facts is not clear. It seems contradictory. It does not show whether all or part of the cotton is being held by the assessor, or whether it has all been released. At one place it is stipulated that "after payment by it under protest of the taxes levied and assessed against said cotton, plaintiff has sold, and offered for sale, portions of said cotton." In the last paragraph of the stipulation, the fact appears as follows: "That plaintiff demanded of defendants the delivery of said imported property, but defendants always refused to deliver the same, and now refuse unless the taxes so levied and assessed against said property were, and are first paid, which plaintiff refused and refuses to do."

Findings of fact were waived, and this stipulation as to facts takes the place of findings by the court, but because of its uncertainty in regard to this important matter, we are unable to tell whether judgment should be directed for a return of the property, or for a return of the tax collected. Plaintiff is entitled to some relief, but the record is not sufficiently definite to enable us to make anything but an alternative order.

Respondent objects to a consideration of the bill of exceptions containing this agreed statement of facts because the judgment was rendered and notice of entry given on August 30th, and the bill of exceptions was not tendered until October 2d. Appellant relied upon the pendency of its motion for a new trial to interrupt the running of the time allowed for presenting the bill of exceptions, and respondent contends that as the case was tried upon an agreed statement of facts, plaintiff was not entitled to a new trial, and therefore the pendency of its motion would not serve to extend the time for appeal. The record contains a stipulation of counsel that the "judgment-roll, notice of intention to move for a new trial, order denying motion for a new trial and plaintiff's bill of exceptions shall constitute the record on

appeal herein.'' No objection appears to have been made to the power of the trial court to hear and determine the motion for a new trial, or to settle the bill of exceptions. Under such circumstances we do not think respondent is in a position to urge the point here, even though it were meritorious. Furthermore, even though we take respondent's position and consider only the judgment-roll, we find that substantially all the facts set out in the stipulation of facts are admitted by the pleadings, and upon the judgment-roll alone, with these admissions in the pleadings, we should reach the same conclusion.

The judgment is reversed with instructions to the trial court to render judgment for the plaintiff declaring the tax illegal and void, and for a return of the property held, or of the money collected by the assessor, as the facts may warrant.

Nourse, J., and Brittain, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 19, 1920.

All the Justices concurred, except Wilbur, J., and Lennon, J., who were absent.