[Civ. Nos. 21252-21253. Second Dist., Div. Two. Apr. 24, 1956.]

SAMUEL L. SIMON et al., Respondents, v. COUNTY OF LOS ANGELES, Appellant.

[Two Cases.]

Harold W. Kennedy, County Counsel, and Gordon Boller, Assistant County Counsel, for Appellant.

George I. Devor and Paul P. Selvin for Respondents.

ASHBURN, J.—Plaintiffs, a partnership known as Commercial Steel Company, brought two actions (consolidated for purposes of appeal) to recover taxes paid under protest to defendant county of Los Angeles for the years 1952 and 1953, respectively. The taxes were levied upon imported articles. The question is whether article I, section 10, clause 2 of the United States Constitution was violated.[1] That

---

[1] "No State shall, without the Consent of the Congress, lay any Impost or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws. . . ."

section applies to foreign commerce, while interstate transactions fall within article I, section 8, clause 3.[2] Plaintiffs prevailed in both actions and the county appeals.

A determination of what constitutes, within the doctrine of *Brown* v. *State of Maryland,* 12 Wheat. (U.S.) 419 [6 L. Ed. 678], "the original form or package in which . . . imported" (p. 441), must control the ruling herein.

The trial court held to be taxable by the county all articles whose containers had been opened for any reason and ruled that those goods whose containers or fasteners had not been opened or removed were still in the status of imports and not locally taxable. Our discussion is therefore confined to the latter type of merchandise.

Plaintiffs are in the business of importing from Europe building materials and supplies, mostly nails, and selling them locally at wholesale or retail. About 90 per cent of the property which the county attempted to tax consisted of nails imported from England in kegs and gunny sacks, each having net weight of 100 pounds. Such sacks or bags contained cement-coated nails and are the "customary package in Europe. They ship nails all over the world in bags." Other items subjected to the tax came as follows: Hardware cloth in rolls; foundation bolts and washers in sacks; chain in barrels; harrow disks in crates; reinforcing rods in long-ton bundles tied securely; bale ties in bundles tied with wire and wrapped with burlap; barbed wire in rolls or coils; miscellaneous hardware in wooden boxes. On arrival the shipment containing all or any of these commodities was classified at the dock and then transported by public carrier to plaintiffs' warehouse. The kegs and bags of nails were placed on wooden pallets (about 20 to a pallet), thus lifted onto and off the truck and into the warehouse where they were piled, pallet on pallet, from floor to ceiling or a lesser height. The rolls of hardware cloth were stacked on end in the truck and in the warehouse. All of the above articles were stored as convenience dictated in the warehouse and none of the kegs, bags, sacks, barrels, bundles, rolls, crates or boxes had been opened prior to the assessment date. Plaintiffs would receive one to three shipments a month, containing from 500 to 2,000 bags and kegs of nails. No effort was made to segregate one shipment from another,

---

[2]"The Congress shall have Power . . . To regulate Commerce with foreign Nations, and among the several States and with the Indian Tribes."

and plaintiffs could not tell in any way the particular cargo from which any given keg, box or other container had come; the new goods would be placed on top or in front of the old; a new load might be put on top of half of an earlier one; sales were made as items were needed and without reference to separate shipments; thus the articles received in an earlier cargo might be on hand for months before that particular shipment would be exhausted. While batches of goods were not separately identifiable, each container such as keg or bag would carry the order number, size of nail, name of shipper and of buyer; also "made in England" or other country of origin.

Respondents argue and the trial judge ruled that each unopened container, such as a keg or bag or box or roll or bundle, was an original package and not locally taxable. Appellant argues that each shipment in the aggregate was the package, or its legal equivalent, relying upon *E. J. Stanton & Sons* v. *County of Los Angeles,* 78 Cal.App.2d 181 [177 P.2d 804].

The original package doctrine was announced by Chief Justice John Marshall, in *Brown* v. *State of Maryland, supra,* 12 Wheat. (U.S.) 419 [6 L.Ed. 678], in these words: "It is sufficient for the present to say, generally, that when the importer has so acted upon the thing imported that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the state; but while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported, a tax upon it is too plainly a duty on imports to escape the prohibition in the constitution." (P. 441.) The proliferation of that concept has yielded many complexities such as the problem presented in the Stanton case, namely, what constitutes original package in a case where the goods are not susceptible of packaging.

The exact phrase used by Chief Justice Marshall is "the original form or package in which it was imported."[3] In

---

[3]The opinion suggests that section 10, clause 2 of Article I would apply to interstate transactions, but that view was soon rejected. (See *Woodruff* v. *Parham,* 8 Wall. (U.S.) 123 [19 L.Ed. 382]; *Sonneborn Bros.* v. *Keeling,* 262 U.S. 506 [43 S.Ct. 643, 67 L.Ed. 1095, 1098].) Goods in interstate commerce are taxable locally when they have "come to rest" in the state, regardless of the original package rule. (See *Parrott & Co.* v. *City & County of San Francisco,* 131 Cal.App.2d 332, 341 [280 P.2d 881].)

*West Virginia & Maryland Gas Co.* v. *Towers,* 134 Md. 137 [106 A. 265, 268], the court had the task of applying the rule to the transportation of natural gas and said at page 268: "The term 'original package,' when used in these cases, means the form or physical condition of the article of commerce in which it is transported in its interstate movement.

"In *Brown* v. *Maryland,* 12 Wheat. [U.S.] 419 [6 L.Ed. 678], Chief Justice Marshall uses the expression 'original form or package' in referring to the article in that case. In using the word 'package' he was no doubt influenced by the nature of the article therein referred to, which was a package of dry goods. By the decision in that case, as well as the many other cases that have followed, it was not intended that by the use of such word the principle enunciated in relation to the time at which an article of commerce ceases to be a thing of interstate commerce should be limited to those articles that are capable of being put in the form of a package in the generally accepted meaning of that word, but it was likewise to apply to other articles incapable of assuming the form of a package, literally speaking, by reason of their physical properties, and to which the expression is less appropriate, such as the article in the case before us."

Mr. Justice Cardozo, also dealing with distribution of natural gas, made the following observations in *In re Pennsylvania Gas Co.,* 225 N.Y. 397 [122 N.E. 260, 261]: "But the rule of the 'original package' is not an ultimate principle. It is an illustration of a principle. It assumes transmission in packages, and then supplies a test of the unity of the transaction. If other forms of transmission are employed, there is need of other tests. . . . The essential unity of the transaction remains the final test." (P. 261.) Again, in *Baldwin* v. *Seelig,* 294 U.S. 511 [55 S.Ct. 497, 79 L.Ed. 1032, 1040, 101 A.L.R. 55], the distinguished Justice said: "In brief, the test of the original package is not an ultimate principle. It is an illustration of a principle. *Pennsylvania Gas Co.* v. *Public Serv. Commission,* 225 N.Y. 397, 403 [122 N.E. 260, P.U.R. 1919C, 663]. It marks a convenient boundary and one sufficiently precise save in exceptional conditions. What is ultimate is the principle that one state in its dealings with another may not place itself in a position of economic isolation. Formulas and catchwords are subordinate to this overmastering requirement."

When the penumbral case of *E. J. Stanton & Sons* v. *County of Los Angeles, supra,* 78 Cal.App.2d 181 arose, it

became necessary for this court to apply the *Brown* v. *Maryland* rule to an import that essentially was not capable of packaging in any sense. That case dealt with importations of lumber which were not fastened together in any way. The pieces were stacked in the importer's yard and the lumber contained in each shipment was kept separate from other cargoes. Only the broken lots remaining after sales had been made from a given shipment were taxed. The court recognized, with Mr. Chief Justice Stone, that "the reconciliation of the competing demands of the constitutional immunity and of the state's power to tax, is an extremely practical matter." (*Hooven & Allison Co.* v. *Evatt*, 324 U.S. 652 [65 S.Ct. 870, 89 L.Ed. 1252, 1265].) The problem was stated thus at page 184: "The controversy revolves about the question whether upon the sale of a portion of a shipment the remainder becomes subject to taxation. Respondent contends that so long as any parcel of the entire lot remains in the possession of the importer it is not subject to state taxation prior to sale; that each parcel or board is marked so as to distinguish it from all others and is therefore in itself an original package. Appellants argue that by the sorting, segregating and tallying of the timbers, and by virtue of sales from the cargoes received, the remainder being offered for sale becomes a part of the mass of property in the county and subject to taxation." And the court further said: "The meaning of his phrase 'original form or package' is determinative of the instant contest. [P. 184.] . . . The legal concept of 'original package' is an aggregation of articles imported. . . . Indeed such articles of commerce as steel beams, threshing machines, telegraph poles and many others might be cited as illustrative of classes of imports that are incapable of being wrapped in cellophane or encased in wooden or steel crates. Although they might arrive at the dock without cover, nevertheless a shipment of such articles constitutes the original form or the original package. Such articles as those last mentioned, or lumber as in the instant case, require neither bundling to facilitate their handling nor wrappers to protect them from the elements. Indeed, to bundle timbers would impair the facility of handling a shipment. The phrase 'original package' refers to the unit transported by the shipper and delivered in the exact condition in which it was shipped. . . . It is an aggregation of goods put up in whatever form and as a unit transported from a foreign land to our shores, or from one state to another.

. . . From the authorities above quoted the conclusion is irresistible that the unit of importation is the original package; that such unit only and not its constituent elements is within the exclusive federal jurisdiction. . . . A cargo of planks, timbers or logs imported from foreign lands is surrounded by the invisible gossamer woven of law, custom and convention which protects the merchandise from the local tax assessor only so long as it retains the unbroken wrapper in which it entered the port. But when such cargo sheds its invisible cover, even though in the warehouse of the importer, and is so sorted and classified as to facilitate its sale, and portions thereof are sold until the pile is depleted and the remnants thereof are commingled with new shipments of the same type of timbers, also to be offered for sale, then a reasonable construction of section 10 and the decisions which have interpreted its meaning compel the termination of immunity from local taxation of such broken lots and commingled remnants of imported lumber.'' (Pp. 186-188.)

The power of the county to tax was thus upheld upon the theory that the ''aggregation of articles imported'' constituted in legal concept an original package which was broken when some of the parts of the ''aggregation'' were sold locally. The case undoubtedly represents the law applicable to a situation where packaging is inherently impossible or impracticable. Our Supreme Court refused a hearing and the United States Supreme Court denied certiorari. (332 U.S. 766 [68 S.Ct. 75, 92 L.Ed. 352].) But the Stanton case does not control imports which actually are in packages. In such instances the queston is what is the original form or package.

This question received attention in *Austin* v. *Tennessee*, 179 U.S. 343 [21 S.Ct. 132, 45 L.Ed. 224]. The State of Tennessee had enacted a statute making it unlawful to bring into the state for sale or other disposition any cigarettes or cigarette papers. An enterprising citizen of North Carolina had cigarettes put in pasteboard boxes three inches long and 1½ inches wide, containing 10 cigarettes. Those boxes were separately stamped and labeled and dumped on the floor of the manufacturer's warehouse. The express company was notified to get them and its agent took them from the floor, placed them in an open basket belonging to the express company and in that container transported them to defendant in the State of Tennessee. At defendant's place of business the basket was emptied upon the counter and taken away.

Defendant sold one of these packages without breaking it and was indicted for violation of the local statute. The Supreme Court first upheld the validity of the law and then discussed the question of whether the sale in question was valid because it was an interstate shipment in an original package. After quoting *Brown* v. *Maryland* (as we have done above) the court said, at page 351 (or 229): "This sentence contains in a nutshell the whole doctrine upon the subject of original packages, upon which so formidable a structure has been attempted to be erected in subsequent cases. Whether the decision would have been the same if the original packages in that case, instead of being bales of dry goods or hogsheads, barrels or tierces of liquors, had been so minute in size as to permit of their sale directly to consumers, may admit of considerable doubt. Obviously the doctrine of the case is directly applicable only to those large packages in which from time immemorial it has been customary to import goods from foreign countries. It is safe to assume that it did not occur to the Chief Justice that, by a skilful alteration of the size of the packages, the decision might be used to force upon a reluctant people the use of articles denounced as noxious by the legislatures of the several states." And at page 359 (or 232): "The real question in this case is whether the size of the package in which the importation is actually made is to govern, or the size of the package in which bona fide transactions are carried on between the manufacturer and the wholesale dealer residing in different states. We hold to the latter view. The whole theory of the exemption of the original package from the operation of state laws is based upon the idea that the property is imported in the ordinary form in which, from time immemorial, foreign goods have been brought into the country. . . . Without undertaking to determine what is the proper size of an original package in each case, evidently the doctrine has no application where the manufacturer puts up the package with the express intent of evading the laws of another state, and is enabled to carry out his purpose by the facile agency of an express company and the connivance of his consignee." The claim of original package was rejected because the normal practices of the trade had been abandoned and the packages were not such as were ordinarily used in that type of commerce. The contrary appears from the uncontradicted evidence at bar, for the packages involved were those customarily used in Europe for shipment throughout the world; there

was no attempt to avoid the effect of any statute or decision and was no departure from conduct of normal foreign trade.

■ Mere size of the container is not the criterion of an original package,—as witness these cases in which the original package contention was upheld: *Imperial Dev. Co.* v. *City of Calexico,* 47 Cal.App. 666, 668, 670 [191 P. 50] (separate bales of cotton); *Gus Leisy & Co.* v. *Hardin,* 135 U.S. 100, 124 [10 S.Ct. 681, 34 L.Ed. 128, 138] (kegs and cases of beer); *Schollenberger* v. *Pennsylvania,* 171 U.S. 1, 24 [18 S.Ct. 757, 43 L.Ed. 49, 58] (10-pound package of oleomargarine); *United States* v. *Sixty-Five Casks Liquid Extract,* 170 F. 449, 454 (cask holding 50 gallons of liquid extract); *Anglo-Chilean Nitrate Sales Corp.* v. *Alabama,* 288 U.S. 218, 225 [53 S.Ct. 373, 77 L.Ed. 710, 714] (nitrate in bags containing 100 pounds each); *Re Taxes, Pacific Guano etc. Co.,* 32 Hawaii 431, 441 (nitrate of soda in bags); *Southern Pac. Co.* v. *City of Calexico,* 288 F. 634 (bale of cotton).

This court quoted with approval in the Stanton case, *supra,* at page 192, the following language of *Austin* v. *Tennessee,* 179 U.S. 343 [21 S.Ct. 132, 45 L.Ed. 224]: "No doubt the fact that cigarettes are actually imported in a certain package is strong evidence that they are original packages within the meaning of the law; but this presumption attaches only when the importation is made in the usual manner prevalent among honest dealers, and in a bona fide package of a particular size." ■ The presumption applies here for the importation was made in the usual manner prevalent among honest dealers, in a bona fide package of a customary size. The record shows no departure from normal trade practices tending to offset the presumption. The ruling of the trial court in these cases is not inconsistent with the Stanton decision, or otherwise erroneous.

Judgment in each case affirmed.

Moore, P. J., and Fox, J., concurred.