DREW, Chief Justice.
This direct appeal from a final decree of the Circuit Court of Dade County comes to us under Article V of the Florida Constitution, F.S.A. vesting jurisdiction here to review on appeal any decision of a trial court “construing a controlling provision of the * * * federal constitution.”[1]
Florida Greenheart Corporation, a Florida corporation, appellant, is a Miami importer of pilings and sawn timber called Demerara Greenheart from British Guiana. In its complaint against the Tax Assessor and other tax officials of Dade County and the State of Florida, appellees, it sought to enjoin the imposition of tangible personal property taxes upon such greenheart, contending the assessment and imposition of such taxes was a tax upon import in violation of Article I, Section 10, Clause 2, of the Federal Constitution. It alleged that the individual pieces of greenheart were shipped by boat to appellant’s storage yard in Dade County where they were unloaded, stacked according to existing orders or according to descriptions, and stored until sold without being altered in form, substance or character and without being mixed with any other property of any kind except other pieces of greenheart previously imported, stacked and stored as above stated, and that each of said pieces of green-heart is an import constituting an original package.
Appellees answered, denying the allegations of the complaint that the greenheart shipments of individual pieces were each imports immune from county tangible personal property taxation. Evidence was taken in the form of affidavits, exhibits and depositions upon the issues made by the pleadings.
The chancellor entered his final decree finding the equities with the taxing authorities and that the importer plaintiff did not demonstrate immunity of said piling and sawn timber from taxation pursuant to Article I, Section 10, Clause 2, of the Constitution of the United States.
To summarize, the chancellor found that at least some of the greenheart was “ ‘put to the use for which it was imported,’ ” and “ ‘mixed with the mass of local property’ ” “ ‘by having been offered for sale among the community at large;’ ” “that there was a ‘breaking of bulk’ ” “in at least some of the shipments of ‘Greenheart,’ ” that some of it was stacked in piles according to length, no effort having been made to keep it separated as a unit of transportation or as to anticipated particular sales and it was offered for sale to the public; that the portion of the greenheart so stacked was commingled as to shipment and offered for sale to the public.
The chancellor conceded that any shipment of greenheart which may have been kept apart from other greenheart and maintained on plaintiff’s property in the hope it might be sold to some particular purchaser may have retained its status as an import until sold; that under such circumstances it would not have been put to the use for which it was intended and there would have been no mixing with the mass of local property, and no offer of it for sale among the community at large nor breaking of bulk. But the chancellor said he was unable under the facts presented to separate the two categories discussed; that from the *591 evidence 60 to 70 per cent of the greenheart brought to Dade County was in hopeful anticipation of some particular future need, but the chancellor could not glean from the evidence when and to what extent such greenheart materials were commingled with other shipments offered for sale among the general public.
The chancellor then stated the facts above summarized correspond closely with the factual situation in E. J. Stanton & Sons v. Los Angeles County, 78 Cal.App.2d 181, 177 P.2d 804, certiorari denied 332 U.S. 766, 68 S.Ct. 75, 92 L.Ed. 352. The chancellor said the E. J. Stanton & Sons case held in effect that the unit of transportation or importation was the original package, that such unit was broken and offered for sale to the general public and that it therefore passed the point where the prohibition to tax ceased. The chancellor also said he found no case which holds that each piece of lumber is the “original package”; and that the Stanton case represents the law applicable to a situation where packaging is inherently impracticable.
The decree of the trial court holds that the property is taxable apparently on the theory that the sale of any portion of a shipment, after being placed in stacks of uniform length upon unloading, constituted an alteration of the “original form or container” in which the property was imported, although such lumber was purchased by the importer, invoiced, and classified by customs service by board-foot measurement, and sold by appellant by the same unit without physical alteration of the pieces, each bearing individual identification stamped at the foreign point of origin of the shipment. That part of the shipment remaining in appellant’s hands and held solely for sale was found to have been “put to the use” for which it was imported.
It is impossible to reconcile this holding with our decision in Overstreet v. Frederick B. Cooper Co., Fla.1961, 134 So.2d 225, which dealt with certain imported canned meats from Europe. In that case the meat was imported in original cases and was stored in a warehouse where it was sold by the importer from time to time in the original unbroken cases. We held that the meats were not subject to local personal property taxes, holding: “Thus it appears that so long as personal property imported from a foreign country remains the property of the importer, in the original form or container in which imported, it retains its character as an import and is exempt from taxation by state or local authorities. * * * And the offering of the goods for sale by the importer does not subject them to taxation by the state.”
The chancellor in this case seems to attach great significance to the fact that after these logs and the heavy sawn timber were placed in the importer’s warehouse or on his yard and thereafter sold, they ceased to enjoy the exemption. In this respect the chancellor said: “That portion of the greenheart so stacked and commingled as to shipment and offered for sale to the public had clearly passed that point where prohibition to tax ceases and the power of the state to tax commences. That merchandise had been put to the use for which it was imported.” (Emphasis supplied.) It seems clear that what the chancellor is saying is that, when the importer offered the lumber for sale, it became subject to local taxation because of the fallacious reasoning that such was the purpose for which it was imported. This is not what the Constitution provides and the cases hold. On the contrary, in most instances the very purpose of importing is for resale. It is after the sale — where it is sold in the original form or package— that it becomes taxable by local authority.
Moreover, another fallacious assumption is the significance given by the chancellor to the words “original package.” Where this expression has been used in the cases, it has been used in juxtaposition with the words “original form.” This was the language used more than 100 years ago in *592 the early case of Brown v. State of Maryland by Justice Marshall, 12 Wheat. 419, 25 U.S. 419, 6 L.Ed. 678. The cases since have held that the exemption attaches to the sale in the original form or the original package. Obviously in imports of articles of great size such as this greenheart timber, or perhaps immense mahogany logs or large pieces of machinery, to confine the exemption to the original package idea would be to deny the exemption to articles of personal property solely because of its form or size.
In this case the original package idea is carried to the point of holding that the ship or cargo itself constitutes in some manner the original package, although the record reflects that appellant’s shipments were invariably brought by boats bearing numerous consignments for other ports. The chancellor relied upon E. J. Stanton & Sons v. Los Angeles County, supra, which held that lumber of different shipments, although stacked separately in the importer’s storage yard, was taxable as soon as one piece of it was sold; i. e., when the original package (the shipload) was broken. We cannot agree with this conclusion, even if it were the result reached by the California court, for three reasons: first, it ignores the original form concept; second, it is directly contrary to our holding in Overstreet v. Frederick B. Cooper, supra; and, third, it goes counter to cases such as those which hold cotton in bales, kegs of nails, barrels of chains, rolls of cloth, disks in crates, wine in packages and similar items enjoy the exemption.[2]
If the evidence in this case showed that a few logs of greenheart were imported by a dealer in domestic and other piling 'and promiscuously mixed with such other piling and sold to the public when so commingled, we think then it would fall within the rationale of those cases which hold that when the original package is broken or the articles commingled with the general property of the state it loses its status of exemption under the applicable constitutional provision.
There are numerous cases holding that minerals imported in bulk, phosphate imported in bags, oil imported in bulk do not lose their status as being exempt merely by virtue of their form.[3] We cannot see, and the record does not disclose, how it would be possible physically to make packages out of this personal property. We hold that under all of the cases with the possible exception of the Stanton case, which is directly contrary to our holding in the Overstreet case, this property under the facts disclosed by this record enjoys immunity from taxation under the Constitution.
Reversed and remanded for the entry of a decree in accordance with the views herein expressed.
THORNAL, O’CONNELL, CALDWELL and HOBSON (Retired), JJ., concur.
ERVIN, J., dissents with opinion.
ROBERTS, J., dissents and agrees with ERVIN, J.

. The language of the questioned decree is “ * * * that the plaintiff has not demonstrated an immunity from taxation pursuant to Article I, Section 10, Clause 2, of the Constitution of the United States, as alleged, * *

. Low v. Austin, 13 Wall. 29, 80 U.S. 29, 20 L.Ed. 517; Imperial Development Co. v. City of Calexico, 47 Cal.App. 666, 191 P. 50; Simon v. County of Los Angeles, 141 Cal.App.2d 74, 296 P.2d 381.

. Anglo-Chilean Nitrate Sales Corp. v. State of Alabama, 288 U.S. 218, 53 S.Ct. 373, 77 L.Ed. 710. 58 Harvard Law Rev. 858.