ERVIN, Justice
(dissenting) :
My study of the authorities leads me to the conclusion that we should affirm the decision of the chancellor. Furthermore, from a consideration of the evidence I agree with the chancellor and the appellees that many of the greenheart timbers on appellant’s storage yard were offered for sale and sold piecemeal to the general pub- *593 lie. In reaching the conclusion we should affirm, I believe the rule announced in E. J. Stanton & Sons v. Los Angeles County, 78 Cal.App.2d 181, 177 P.2d 804, certiorari denied 332 U.S. 766, 68 S.Ct. 75, 92 L.Ed. 352, is correct that a shipment or cargo of timbers received by an importer constitutes the unit of importation in the sense of the original package and when the timbers are offered for sale and sold piecemeal or as separate items to the general public the package is broken and the immunity from local taxation no longer obtains. In so doing, the contention is rejected that each piling or piece of sawn timber of the green-heart constitutes an original package because of its unique or inherent nature, rendering it incapable of being packaged for shipment with other like pilings or timbers of greenheart.
E. J. Stanton & Sons v. Los Angeles County, supra, reads in part:
“ * * * A cargo of planks, timbers or logs imported from foreign lands is surrounded by the invisible gossamer woven of law, custom and convention which protects the merchandise from the local tax assessor only so long as it retains the unbroken wrapper in which it entered the port. But when such cargo sheds its invisible cover, even though in the warehouse of the importer, and is so sorted and classified as to facilitate its sale, and portions thereof are sold until the pile is depleted and the remnants thereof are commingled with new shipments of the same type of timbers, also to be offered for sale, then a reasonable construction of section 10 and the decisions which have interpreted its meaning compel the termination of immunity from local taxation of such broken lots and commingled remnants of imported lumber.
“The circumstances attending the shipments in question are additional reasons for concluding that the several boards or timbers were not original packages. (1) Lumber is universally bought and sold by board feet; (2) the United States Customs’ method of classification of lumber is by board feet; (3) the price paid by respondent for its shipments is determined by board feet except in the purchase of lignum vitae logs; (4) the consular certificates of origin describe the shipments by board feet, grade and variety; (5) the absence of an address from, each board and the manner of transporting the lumber as an aggregation of goods, — these facts establish the folly of calling each plank an original' package, and of designating the segregated and classified lumber in the bins to be in the 'original form’ in which it was shipped.” 177 P.2d 804, 807, 808.
If this were not the rule, discrimination-in the impact of local taxes disadvantageous-to fair competition in the building supply business in our communities would result. In this respect, attention is directed to the-views expressed by the United States Supreme Court in the case of F. May & Company v. City of New Orleans, 178 U.S. 496, 20 S.Ct. 976, 44 L.Ed. 1165, which appear analogously to apply in principle to> this case.
The Court said:
“In our judgment, the 'original package’ in the present case was the box or case in which the goods imported were shipped, and when the box or-ease was opened for the sale or delivery of the separate parcels contained' in it, each parcel of the goods lost its distinctive character as an import andl became property subject to taxation by the state as other like property-situated within its limits. * * * We cannot impute to the framers of the-Constitution a purpose to make such a. discrimination in favor of property imported from other countries as. would result if we approved the views, pressed upon us by the plaintiffs. When their goods had been so acted’, upon as to become a part of the general. *594 mass of property in the state the plaintiffs stood, with respect to liability to state taxation, upon the same basis of equality as the owners of like property, the product of this country; * * * ”
In Hinson v. Lott, 8 Wall. 148, 75 U.S. 148, 19 L.Ed. 387, the United States Supreme Court, in discussing the landmark case Brown v. State of Maryland, 12 Wheat. 419, 25 U.S. 419, 6 L.Ed. 678 (1827), said with regard to foreign imports in the hands of the importer:
“ :|: * * y\s soon as they passed out of his hands into use, or were offered for sale among the community at large, they would he liable to a tax which might render their use or sale impossible.” (Italics supplied.)
Appellant’s contention that the later California case of Simon v. County of Los Angeles, 141 Cal.App.2d 74, 296 P.2d 381 (1956), reversed or greatly modified E. J. Stanton & Sons v. Los Angeles County, supra, does not appear to be correct, because in the Simon case the California Court said that E. J. Stanton & Sons, supra: “[Undoubtedly represents the law applicable to a situation where packaging is inherently impossible or impracticable,” but “the Stanton case does not control imports which actually are in packages” as was the situation in the Simon case. The same distinction made in the Simon case applies as -between the instant case and Overstreet v. Frederick B. Cooper Co. (Fla.1961), 134 So.2d 225.
The anomalous nature of the majority opinion in the case is further demonstrated by reference to 51 Am.Jur., pages 140 and 141, where it is stated:
“The doctrine under consideration loses most of its meaning when it is sought to be applied to certain kinds of property. Thus, an individual cow or steer or an entire herd of cattle, transported into a state from a foreign country on the hoof is in no sense of the term to be placed in the category of an ‘original package,’[1] and if cattle should be transported from a foreign country into a state by train or truck, and each such car or truck should be regarded as an ‘original package,’ the cattle would lose their status as imports as soon as they were unloaded from the train or trucks.[2] If, where oil is imported into the country in tank cars or tank steamers, the cars and boats may be regarded as ‘original packages,’ then such packages are broken and the character of the oil as an import ceases when it is pumped from the cars or boats and stored in tanks within the state, and thereafter the imports and exports clause offers no objection to state taxation.[3] With respect to property of this kind the determining factor in deciding whether the property has lost its status as an import and hence become subject to state taxation under the imports and exports clause appears to be whether it has become mingled with other property in the state.[4] The foregoing test has been followed even where the ranch on which cattle were kept after their importation was designated by the Secretary of the Treasury as a private bonded warehouse for customs purposes.” [5]
and to 15 Am.Jur.2d, Commerce, § 45, which reads as follows:
“Although many and varying definitions have been given, the general gist of the decisions is that an ‘original package’ is that package which, according to custom respecting the particular *595 articles shipped, is usually delivered by the vendor to the carrier for transportation and delivered as a unit to the consignee. It is the package, as a unit, which is delivered by the shipper to the carrier at the initial place of shipment in the exact condition in which shipped.[6] Upon the question what is an ‘original package,’ it is immaterial whether the package is suitable for wholesale or retail trade or whether it is shipped to a'dealer or to a consumer.
“Where an aggregation of articles or packages is, for convenience in shipping, packed and shipped in a larger package or receptacle, the larger package or receptacle, and not the individual articles or packages, constitutes the original package, even though the larger receptacle is unfastened or uncovered. Where the car or vessel itself constitutes the receptacle or container in which the commodity is transported, the car or vessel, together with the contents, constitutes the original package. However, there is authority that where goods are shipped in carload lots, packed in cases, casks, or sacks, the cases, casks, or sacks are the original packages and not the car.
“In cases where packaging is inherently impossible or impracticable, as where lumber which is not fastened together in any way is imported, the ‘aggregation of articles imported’ has been held to constitute, in legal concept, an original package.[7] However, there is also authority to the effect that the ‘original package’ doctrine is inapplicable in a situation where packaging is impossible. Thus, the doctrine has been held inapplicable to imported cattle, since neither an individual cow, nor a herd, nor a stock car in which the cattle are transported, constitutes an original package.” [8]
I believe the weight of authority supports an affirmance of the decree below.
ROBERTS, J., concurs.

. Tres Ritos Ranch Co. v. Abbott, 44 N.M. 556, 105 P.2d 1070, 130 A.L.R. 963.

. Ibid.

. Mexican Petroleum Corp. v. City of South Portland, 121 Me. 128, 115 A. 900, 26 A.L.R. 965.

. Ibid.

. Ibid.

. E. J. Stanton & Sons v. Los Angeles County, 78 Cal.App.2d 181, 177 P.2d 804, cert. den. 332 U.S. 766, 68 S.Ct. 75, 92 L.Ed. 352; McGregor v. Cone, 104 Iowa 465, 73 N.W. 1041, 39 L.R.A. 484; Re: Agnew, 89 Neb. 306, 131 N.W. 817, 35 L.R.A.,N.S., 836.

. Simon v. Los Angeles County, 141 Cal.App.2d 74, 296 P.2d 381.

. Ibid.