[Civ. No. 46268. Second Dist., Div. Four. Oct. 3, 1975.]

CRAIG CORPORATION et al., Plaintiffs and Respondents, v. COUNTY OF LOS ANGELES et al., Defendants and Appellants.

910

**COUNSEL**

John H. Larson, County Counsel, and James Dexter Clark, Deputy County Counsel, for Defendants and Appellants.

Baker, Ancel & Redmond, Stein & Shostak and Gerald T. Manpearl for Plaintiffs and Respondents.

**OPINION**

**KINGSLEY, Acting P. J.**—This appeal is from a summary judgment granted to plaintiffs on their complaint for recovery of ad valorem property taxes paid under protest. The ground of the decision was that the court did not believe that the declaration of the defendants raised any triable issue of fact.

The plaintiffs, Craig Corporation, Citizens America Corporation, Inter-Pacific Corporation, and Trend of the Times, Inc., are importers and had imported goods in the County of Los Angeles on tax lien date, March 1, 1973. The goods arrived in containers at plaintiffs' individual warehouses, where they were unloaded and stored.

Import immunity was denied plaintiffs on the goods in question. Prior to filing immunity claims, plaintiffs received a written bulletin from the Los Angeles County Assessor's office directing that all goods arriving in cargo containers and unloaded therefrom on tax lien date were not immune from ad valorem property tax on the ground that the cargo container constituted the original package and that the opening and unloading therefrom constitutes a "breaking of the bulk." The policy was premised upon language in *Volkswagen Pacific, Inc.* v. *City of Los Angeles* (1972) 7 Cal.3d 48 [101 Cal.Rptr. 869, 496 P.2d 1237].

Taxes were paid by each plaintiff under protest and applications for equalization of 1973 assessments were filed. On January 16, 1974, a hearing was held before the board of assessment appeals in the matter of Citizens America Corporation. At the hearing a deputy county appraiser stated that immunity was denied on goods shipped in full cargo containers and that the question was a legal one concerning the assessability of imported merchandise. Applicant's offer of proof was rejected and refund was denied. On February 5, 1974, the applications of Craig Corporation, Inter-Pacific Corporation and Trend of the Times, Inc., were heard and denied. At that time, the county representative objected to applicants' offers of proof on the ground that the question was "strictly a legal issue over which the board has no jurisdiction."

The plaintiffs then filed a verified complaint in Los Angeles Superior Court on February 27, 1974, for recovery of ad valorem property taxes, alleging that they were the original importers of the merchandise in dispute and that all of said goods were in their possession in the original unopened package on tax lien date; that the county assessor denied

immunity on the goods; that the assessment was unconstitutional; that the Board of Equalization refused to hear any evidence and denied refund on the grounds that the only question was a legal one over which it had no jurisdiction; that no refund of tax payments had been made.

On March 22, 1974, an answer was filed on behalf of the county and the cities of Los Angeles, Compton, Carson, and Santa Monica, setting forth affirmative defenses, as well as general denials of the allegations.

Thereafter, pursuant to section 2033 of the Code of Civil Procedure, plaintiffs requested that the defendants admit facts to the effect that the imported goods in question were held by plaintiffs in unopened master cartons for resale and had not been sold, hypothecated or mingled with domestic goods. In their responses, the defendants neither admitted nor denied the requests, but claimed insufficient information and indicated they would amend at a later date.

On August 9, 1974, plaintiffs filed a motion for summary judgment supported by a memorandum of points and authorities and the declarations of plaintiffs' attorney of a container shipping executive, and executives of the four plaintiff corporations.

In his declaration, Attorney Gerald T. Manpearl declares that it is his understanding that County Assessor Philip Watson has taken the position that any imports unloaded from a full cargo van before tax lien date and in possession of a Los Angeles County importer, are taxable, regardless of any other facts or circumstances, on the theory that the cargo van constitutes the "original package" of such import. This declaration then attests to the fact that hearings were held before the board of assessment appeals at which plaintiffs' applications for tax refunds were denied on the ground that the assessability of the imports in question is a legal question and beyond the factual jurisdiction of the board.

The declaration of Ronald E. Tippie, import sales manager for the shipper, Sea-Land Service, recounts the increased use of containerized vessels and the characteristics of container shipping. Tippie describes containers as being specially designed to stack on decks or in cargo holds and to fit upon chassis trailers. He states that Sea-Land Service owns or leases its containers from an affiliate; that other shipping companies

usually own their containers; that in no instance are containers owned by either the importers or exporters; that goods shipped in containers are loaded into containers either by the foreign exporter or the shipping company; that the containers are then loaded onto a containership and unloaded upon arrival at the United States port; that the containers are placed upon chassis after being removed from the ship and unloaded either by the shipper at a station near the dock area or by the importer after being trucked to the importer's warehouse; that the importer is required to return the empty containers to the shipping company within a period of a few days.

The declarations of the import executives state that they are "familiar with all the facts stated herein and if called upon as a witness could competently testify thereto"; that the goods imported were wrapped and boxed by the exporter and placed in master shipping cartons; that the master cardboard cartons were loaded in containers or "cargo vans" by the exporter or the shipping company; that upon arrival in the United States the goods were unloaded from the containers at the importer's warehouse; that all of such goods were in their original unopened package on tax lien date and had not been sold or hypothecated; that the importers held the goods for resale in the course of doing business as wholesalers; that they received a bulletin from the assessor's office stating that all goods unloaded from containers or "cargo vans" on tax lien date were not immune from property taxes; that they filed immunity claims which were denied; that they paid the taxes under protest and made applications for equalization of assessment which were heard and denied by the board of assessment appeals; and that the present lawsuit was filed within six months of said denials as required by the Revenue and Taxation Code.

Plaintiffs' points and authorities raise two issues: can the County of Los Angeles impose ad valorem property taxes on otherwise exempt imported goods solely because these goods arrived in the United States in a cargo van and were unloaded from such van prior to tax lien date? Is a cargo van, as a matter of law, an "original package"?

The defendants' opposing contentions are: that the issues in this case may not be decided as a matter of summary judgment; that the declarations in support of plaintiffs' motion are conclusory; that issues are factual as to the circumstances of the imported goods; and that the proceedings should be remanded to the board of assessment appeals for further hearings on the facts.

Plaintiffs' supplemental memorandum submits that defendants' contentions, as set forth in the declaration of James Dexter Clark, do not raise any triable issues of fact and that defendants' failure to deny the facts stated in plaintiffs' requests for admissions conclusively settles any factual issues involved in this dispute. Plaintiffs also submit that the decision in *Volkswagen Pacific, Inc.* v. *City of Los Angeles* (1972) 7 Cal.3d 48 [101 Cal.Rptr. 869, 496 P.2d 1237], is not controlling in cases involving ad valorem property taxes.

The defendants appeal on several grounds the summary judgment granted to plaintiffs:

(1) The evidence is not sufficient to support a summary judgment;

(2) The import-export clause was not meant to bar the imposition of a nondiscriminatory ad valorem tax;

(3) The goods in question were no longer being held by the importer at the time of taxation;

(4) The cargo containers constitute the original packages in this case;

(5) The goods in question were mingled with the mass of property in the state;

(6) Parcels within the containers cannot be the original packages in the constitutional sense.

I

█ Code of Civil Procedure section 437c expressly provides that admissions, answers to interrogatories and depositions may be used to support a motion for summary judgment. Defendants' failure to answer plaintiffs' requests for admissions is deemed an admission of the factual matters contained therein under *Jack* v. *Wood* (1968) 258 Cal.App.2d 639 [65 Cal.Rptr. 856].

The foundation of plaintiffs' motion was that upon defendants' admission of the facts surrounding the importation of the goods in question, no further triable issue of fact remained.

In ruling on the motion, the court, in referring to defendants' counsel's declaration, stated that the affidavit was insufficient for the reason of its lack of particularity as to the facts alleged. The court held that the motion should be granted on the basis of the plaintiffs' declarations and the material incorporated in the motion.

Section 437c, Code of Civil Procedure provides that the court "shall consider all of the admissible evidence set forth in the papers and all inferences reasonably deducible from such evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, *if contradicted by other inferences or evidence, which raise a triable issue as to any material fact.*" (Italics added.)

The affidavit filed by defendants' counsel is extremely weak in this regard. It does not set forth admissible evidence sufficient to contradict the inferences deducible from the evidence set forth in the declarations filed in support of plaintiffs' motion.

Section 437c also requires that opposing as well as supporting affidavits and declarations be made and affirmatively shown to be on personal knowledge and based on admissible evidence. This new requirement reverses a line of California summary judgment decisions that permitted a summary judgment motion to be denied by a counter-declaration suggesting triable issues of fact based on conclusions of law and other inadmissible evidence.

In newly amended form, section 437c provides: "Such motion *shall* be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

The determination by the trial court to grant the summary judgment based on plaintiffs' supporting declarations was proper.

## II

The second question to be decided is whether the undisputed facts show that plaintiffs are entitled to summary judgment as a matter of law.

The import-export clause of the federal Constitution provides: "No State shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspections laws; . . ." (U.S. Const., art. I, § 10, cl. 2.)

This grant of immunity from taxation was first considered by the United States Supreme Court in *Brown* v. *The State of Maryland* (1827) 25 U.S. (Wheat.) 419 [6 L.Ed. 678]: "It is sufficient for the present to say, generally, that when the importer has so acted upon the thing imported, that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the State; but while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported, a tax upon it is too plainly a duty on imports to escape the prohibition in the constitution." (Pp. 441-442 [6 L.Ed. p. 686].)

In *Low* v. *Austin* (1871) 80 U.S. (13 Wall.) 29, 34 [20 L.Ed. 517, 519], 45 years later, the court held that a California ad valorem property tax was an impost, and therefore unconstitutional. The court also reiterated the "original package" doctrine enunciated in *Brown* v. *The State of Maryland*: "[T]he goods imported do not lose their character as imports, . . . until they have passed from the control of the importer or been broken up by him from their original cases."

Since the decision in *Low* v. *Austin,* the California courts consistently have recognized that nondiscriminatory property taxes on imports are prohibited by the Constitution, but the question as to whether the imported goods come within the "original package" doctrine has been decided on a case by case basis. In dealing with this problem, the courts have had to struggle with the definition of "original package" in instances where goods have been imported either in bulk, in loose bales, on pallets, or in other configurations which did not readily lend themselves to packaging. (*Imperial Development Co.* v. *Calexico* (1920) 47 Cal.App. 666 [191 P. 50]; *Simon* v. *County of Los Angeles* (1956) 141 Cal.App.2d 74 [296 P.2d 381].

The *Simon* court held that "original package" refers to the unit of transportation, stating that if the importation is made in the manner usual among honest dealers, in a bona fide package of a customary size, there is a presumption that it constitutes the original package. Under this test the packages imported by the four plaintiffs could be said to be

"original." Goods imported by Craig Corporation and Citizens America Corporation were individually wrapped, boxed, and packed in the types of master shipping cartons generally used in the consumer electronics industry. The shoes imported by Inter-Pacific Corporation were packaged in individual boxes which were packed in master shipping cartons. Handbags imported by Inter-Pacific were wrapped in cellophane and placed 12-24 to a shipping carton. Knitwear was placed in cellophane bags, packaged 6 to 12 to an individual box and packed 2 to 4 boxes to a shipping carton. Trend of the Times, Inc., imported upholstery fabrics on rolls which were packed in master shipping cartons. The master shipping cartons were then loaded into cargo vans or containers for shipment to the United States.

Relying on *Volkswagen Pacific, Inc.* v. *City of Los Angeles* (1972) 7 Cal.3d 48 [101 Cal.Rptr. 869, 496 P.2d 1237], defendants contend that the container or cargo vans in which the plaintiffs' master cartons were packed during shipment constituted the original package and that immunity was lost once the cartons were unloaded from the container.

We agree with defendants. Railway cars or crates may be original packages (see *State* v. *Armour & Co.* (1913) 27 N.D. 177 [145 N.W. 1033]) depending on the circumstances. (See *Cook* v. *Marshall County* (1903) 119 Iowa 384 [93 N.W. 372].) However, it does not follow as a matter of law that merely because an importing agent removed the parts from the vans they lose their constitutional protection of imported articles, and the opening of such a container by an importer may not necessarily be effected " 'for the sale or delivery of the separate parcels contained in it' . . ., once [the importers] entered the vans to remove the individual packages they did so with the intent and effect to act as wholesalers 'in the mass of property' . . . [and] they cannot avail themselves of the constitutional immunity from local taxation." (*Volkswagen Pacific, Inc.* v. *City of Los Angeles,* 7 Cal.3d 48, 56 [101 Cal.Rptr. 869, 496 P.2d 1237].) When a box, case or bale that is regarded as an original package reaches its destination for trade or sale and is opened for the purpose of exposing the parcel within for sale, the goods lose their character as imports. (*May* v. *New Orleans* (1900) 178 U.S. 496 [44 L.Ed. 1165, 20 S.Ct. 976]; *E. J. Stanton & Sons* v. *County of L. A.* (1947) 78 Cal.App.2d 181 [177 P.2d 804].)

In the instant case the importers entered the cargo vans with the intent to act as a wholesaler in the mass of property. Therefore the opening of the vans in these particular circumstances by the wholesalers herein for

the purpose of effecting a sale or delivery constituted a breaking of the bulk and a loss of immunity from taxation.

Our conclusion is supported by *Singer Co.* v. *Kings County* (1975) 46 Cal.App.3d 852 [121 Cal.Rptr. 398]. In *Singer,* the retailer entered the cargo vans and removed the cartons, not for the purpose of sale as in *Volkswagen,* but solely to further store the packages until they could be shipped to its own retail outlets; as such, the goods in *Singer* remained immune from taxation. These facts in *Singer* are to be distinguished from the facts before us now, where the taxpayers did not enter the cargo vans acting as retailers seeking only to effect further storage, but as wholesalers seeking to remove the cartons for the purpose of effecting sale and delivery to dealers. The taxpayers herein have no constitutional immunity from taxation.

The judgment is reversed.

Dunn, J., and Jefferson, J.,* concurred.

A petition for a rehearing was denied October 21, 1975, and respondents' petition for a hearing by the Supreme Court was denied December 11, 1975.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.