[Civ. Nos. 47453, 47538. Second Dist., Div. Four. July 5, 1977.]

NELCO CORPORATION, Plaintiff and Respondent, v.
COUNTY OF LOS ANGELES et al., Defendants and Appellants.

COUNSEL

John H. Larson, County Counsel, and James Dexter Clark, Deputy County Counsel, for Defendants and Appellants.

Baker, Ancel & Redmond, Gerald T. Manpreal and Richard C. Spencer for Plaintiff and Respondent.

OPINION

**KINGSLEY, Acting P. J.**—By stipulation of the parties, this court ordered that cases No. 47453 and No. 47538 be consolidated for the purposes of this appeal. The fact situations for the two cases are identical as they relate to the imposition of a nondiscriminatory ad valorem personal property tax on imported goods. Case No. 47453 is an appeal by Los Angeles County and City from a court order granting plaintiff's motion for summary judgment which order required appellants to

refund $4,795.45, plus $634 interest thereon as a personal property tax overpayment for the 1973 tax year based upon an erroneous denial of an immunity claim on imported goods having a market value of $279,068. Similarly, case No. 47538 is an appeal of a summary judgment order requiring appellants to refund $4,145.25, plus $254.68 interest thereon as a personal property tax overpayment resulting from an improper denial of a 1974 import immunity claim on goods having a market value of $356,675.80.

Respondent Nelco Corporation is an importer of Japanese sewing machine products. Nelco purchases directly from the manufacturer and ships the imported equipment in heavy sealed cardboard cartons which during transit are stored in cargo containers or sea vans. Upon arrival of the goods in the United States, the sea vans containing the imports are moved by public carrier to respondent's warehouses and there immediately unloaded. The warehoused goods are stored in the original sealed cartons on pallets which are segregated from other imports according to model and country of origin. From there the goods are shipped to local and out-of-state merchants in furtherance of respondent's business as a wholesaler of the imports.

The present action, which was filed prior to the United States Supreme Court decision in *Michelin Tire Corp.* v. *Wages* (1976) 423 U.S. 276 [46 L.Ed.2d 495, 96 S.Ct. 535], arose as a result of a nondiscriminatory ad valorem county personal property tax imposed upon those goods which were so warehoused on the tax lien dates of March 1, 1973, and March 1, 1974. Although claims for immunity had been filed, immunity was denied. Such denial was based on the ground that removal of the cartons from the sea-going cargo containers constituted a breaking of bulk within the context of the original package doctrine enunciated in *Brown* v. *Maryland* (1827) 25 U.S. (12 Wheat.) 419 [6 L.Ed. 678], and *Low* v. *Austin* (1871) 80 U.S. (13 Wall.) 29 [20 L.Ed. 517].

Taxes were paid under protest, and a claim for refund was filed and denied. Respondent brought the current actions pursuant to sections 5103 and 5141 of the Revenue and Taxation Code. The trial courts granted respondent's motions for summary judgment and it is upon those orders that this appeal is taken.

There are two major issues. First, whether the subject imported goods were taxable prior to the United States Supreme Court's decision in *Michelin.* Second, whether Revenue and Taxation Code section 226 as amended by Assembly Bill No. 2972 section (1) is constitutional to the

extent that it restricts the retroactive application of *Michelin.* Since we decide that the goods involved were taxable prior to the decision in *Michelin,* we need not, and do not, determine either the applicability or the constitutionality of section 226 as so amended.

The import-export clause (art. I, § 10, cl. 2 of the U.S. Const.) provides in pertinent part that, "No State shall, without the Consent of the Congress, lay any Imposts or Duties on Imports or Exports, except what may be absolutely necessary for executing its inspection Laws. . . ." Prior to 1976, this clause was construed to prohibit any nondiscriminatory ad valorem state personal property tax so long as, "they [the imports] remain in the hands of the importer, in the form and shape in which they were brought into this country." (*Low* v. *Austin* (1871) 80 U.S. (13 Wall.) 29, 34 [20 L.Ed. 517, 519].

The *Low* decision was an attempted judicial clarification of Chief Justice Marshall's proscription in *Brown* v. *The State of Maryland* (1827) 25 U.S. (12 Wheat.) 419, 441-442 [6 L.Ed. 678, 686]; "It is sufficient for the present to say, generally, that when the importer has so acted upon the thing imported, that it has become incorporated and mixed up with the mass of property in the country, it has, perhaps, lost its distinctive character as an import, and has become subject to the taxing power of the State; but while remaining the property of the importer, in his warehouse, in the original form or package in which it was imported, a tax upon it is too plainly a duty on imports to escape the prohibition in the constitution."

Subsequent United States Supreme Court decisions have interpreted the "so acted" clause of the original package doctrine to deny immunity from state taxation where the importer of the goods had broken open the original shipping container (*May* v. *New Orleans* (1900) 178 U.S. 496 [44 L.Ed. 1165, 20 S.Ct. 976]), or had imported the goods for the purpose of meeting the present manufacturing requirements of the importer (*Youngstown Co.* v. *Bowers* (1959) 358 U.S. 534 [3 L.Ed.2d 490, 79 S.Ct. 383]).

The California Supreme Court addressed the special problem of goods stored in cargo containers for the purpose of transit but which are unloaded and warehoused upon arrival at their destination in *Volkswagen Pacific, Inc.* v. *City of Los Angeles* (1972) 7 Cal.3d 48 [101 Cal.Rptr. 869, 496 P.2d 1237]. While the court emphasized the *Hooven & Allison Co.* v. *Evatt* (1945) 324 U.S. 652 [89 L.Ed. 1252, 65 S.Ct. 870] rule that the manner of importation is more important than the form in determining

which party shall enjoy importer immunity, the case consistently has been cited to support the proposition that goods taken from sea vans and stored after transit for later distribution to outside dealers were no longer in their original package. Thus, such goods properly could be subject to a nondiscriminatory state personal property tax.

The subsequent decisions are not contrary to this holding. In *Singer Co.* v. *County of Kings* (1975) 46 Cal.App.3d 852 [121 Cal.Rptr. 398], this court held that imports removed from cargo vans retained immunity only so long as they remained in the importer's warehouse and were not exposed to sale. *Craig Corp.* v. *County of Los Angeles* (1975) 51 Cal.App.3d 909 [124 Cal.Rptr. 621], involved an importer who warehoused goods for the purpose of distribution and sale to wholesalers and retail outlets. There we held that, since the purpose of warehousing was to provide storage as part of a direct sales process which was conducted directly from the warehouse, unloading the sea vans was breaking bulk and resulted in the loss of import immunity.

In the instant case, respondent Nelco conducts all of its sales directly from the warehouse. It does not, as in *Singer*, merely passively store the goods for later distribution to its own retail outlets and storage facilities connected therewith. Accordingly, we hold that when respondent entered the sea vans and unloaded them for the purpose of sales and distribution, it had, in fact, broken bulk and therefore, even under pre-*Michelin* law was no longer immune from imposition of the nondiscriminatory ad valorem personal property tax assessed by the county.

The judgments are reversed.

Dunn, J., and Jefferson (Bernard), J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied September 1, 1977. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.