[Civ. No. 56143. Second Dist., Div. Four. Feb. 22, 1980.]

J. N. CEAZAN COMPANY, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

COUNSEL

Katz, Hoyt & Bell and Louis C. Hoyt for Plaintiff and Appellant.

John H. Larson, County Counsel, and James Dexter Clark, Deputy County Counsel, for Defendants and Respondents.

OPINION

**KINGSLEY, Acting P. J.**—Plaintiff appeals from an adverse judgment in an action to recover taxes paid by it under protest. We affirm the judgment.

The facts are not in dispute; this appeal raises only questions of law in interpreting those facts. Hence it becomes our obligation to examine, for ourselves, the legal issues determined by the trial court in reaching its decision. We summarize the agreed facts necessary for that purpose.

Plaintiff is engaged in the business of selling and distributing (among other articles) automobile tires to various dealers both within and without the State of California. Among the tires with which plaintiff dealt were tires manufactured in and imported from the State of Israel. It paid taxes for the tax year 1975-1976 on its inventory, claiming immunity for the tires so imported. Thereafter, and in October 1975, within that tax year, the county imposed "Escape Assessment" based on the value of the imported tires. Plaintiff paid the additional tax so assessed, under protest, and brought the present action for the recovery of such additional tax. Both parties, relying on declarations of the president of plaintiff, uncontested by the county, moved for summary judgment. The trial court denied plaintiff's motion and granted that of the county. Plaintiff has appealed; we affirm.

We quote two paragraphs from plaintiff's declaration which explain the facts underlying the legal issues:

"5. Plaintiff's warehouse in Los Angeles County from prior to March 1, 1975 was, and still is, located at 1113 East 230th Street, Carson, California. All Alliance made tires in plaintiff's warehouse arrived by sea at the Port of Los Angeles from Israel in sea vans (not owned by plaintiff). The vans upon being unloaded from the ship, and after passing customs, were then hauled by tractor to plaintiff's warehouse where the tires were unloaded therefrom and placed directly in a specifically designated area in plaintiff's warehouse, entirely segregated from all other areas, and apart from and not mingled with any domestic made tires. The tires shipped in such sea vans were, of necessity, not packaged separately or in other containers because it would be impractical because of their shape, bulk and weight, and the practical economics, to attempt to do so. The sea vans were rented only for ease of transportation from Israel to plaintiff's warehouse because of the need for a practical economical method of handling, loading, storage aboard ship of the tires, and delivery of the tires in bulk to plaintiff's warehouse in Los Angeles.

"7. Upon receipt these imported tires were immediately placed, and at all times kept, in such wholly segregated area and not removed therefrom except only to distribute and ship tires to plaintiff's warehouses and outlets in El Cajon, California and Portland, Oregon, to replenish stock held there for distribution, and to supply stock to the Careson [*sic*] warehouse personnel for distribution to jobbers and dealers."

In the years prior to the tax year herein involved, plaintiff had successfully claimed immunity for tires similarly imported, relying on the federal constitutional law as then understood. On January 14, 1976, after the levy of the additional tax herein involved, the United States Supreme Court rendered its decision in *Michelin Tire Corp.* v. *Wages* (1976) 423 U.S. 276 [46 L.Ed.2d 495, 96 S.Ct. 535], overruling the prior cases on which plaintiff had relied in former years and holding that (at p. 302 [46 L.Ed.2d at p. 512]): "Petitioner's tires in this case were no longer in transit. They were stored in a distribution warehouse from which petitioner conducted a wholesale operation, taking orders from franchised dealers and filling them from a constantly replenished inventory. The warehouse was operated no differently than would be a distribution warehouse utilized by a wholesaler dealing solely in domestic goods, and we therefore hold that the nondiscriminatory property

tax levied on petitioner's inventory of imported tires was not interdicted by the Import-Export Clause of the Constitution...." The California Legislature promptly enacted section 226 of the Revenue and Taxation Code which, with an amendment subsequently enacted, and herein involved, reads as follows: "The validity of any ad valorem property tax assessment on imported goods, heretofore or hereafter imposed, levied or collected with respect to tax years prior to the 1976-77 tax year, shall be determined pursuant to statutory and case law in effect prior to the decision in Michelin v Wages, (1976), 46 L.Ed. 495, except that for any assessment made prior to January 14, 1976, the court may, if the circumstances warrant and the taxing authority demonstrates that it would be equitable to do so, follow the decision in Michelin v Wages." Plaintiff here relies on that statute, contending: (1) that the tires were exempt under pre-*Michelin* law; and (2) that the county has not met its burden of proving that application of *Michelin* would be equitable. The trial court rejected both contentions, saying, in a minute order:

"a. The goods are taxable under both the prior law and under the *Michelin* decision.

"b. This being the case, the relief from the retroactive effects of *Michelin* as provided by Rev and Tax Code Section 226 is not applicable.

"c. There does not appear to be any reason under the circumstances of this case to give plaintiff any equitable relief as plaintiff [had] an opportunity to adjust its business operations to avoid the tax under the prior law and neglected to do so. This issue of fact—whether plaintiff is entitled to equitable treatment under Rev and Tax Code 226—can not be resolved on a summary judgment motion. The court does not believe this is an issue because the goods were taxable under both the prior law and under the *Michelin* decision.

"4. Defendant to prepare summary judgment and to give notice." Since we agree with the trial court that the tires were taxable under the pre-*Michelin* law, we need not, and do not, consider the alternative ground for the trial court's decision.

I

*Michelin* and section 226 have given rise to a series of decisions. ■ We agree with the county that the fact that some of the

tires were distributed to other locations in California and some to locations in other states is here immaterial. That purported distinction was ignored by this court in *Nelco Corp.* v. *County of Los Angeles* (1977) 72 Cal.App.3d 899 [140 Cal.Rptr. 328], and we see no reason to apply it here. In *Volkswagen Pacific, Inc.* v. *City of Los Angeles* (1972) 7 Cal.3d 48 [101 Cal.Rptr. 869, 496 P.2d 1237], our Supreme Court dealt with a case in which automobile parts were imported in cargo vans similar to those herein involved and were placed by the importer in its warehouse in California. The Supreme Court said (at pp. 55-56): "[Although the parts were shipped in sea vans, it would not follow as a matter of law that merely because an importing agent removed the parts from the vans, they then lost the constitutional protection of imported articles. Because the size of modern sea vans or 'containers' is dictated both by modern shipping technology and by the necessity of reducing the costs of shipping, the opening of such a container by an importer may not necessarily be effected 'for the sale or delivery of the separate parcels contained in it' (*May* v. *New Orleans, supra,* 178 U.S. at p. 508 [44 L.Ed. at p. 1170]), but may instead be accomplished so that the importer can by other means of transportation divert his imports to his outlets in different interior states.

"In the context of the instant case, however, the opening of the sea van did signify a breaking of bulk 'for the sale or delivery of the separate parcels contained in it' (*id.*), so that California governments may properly tax those separate articles. Uncontroverted evidence shows that once the individual packages were removed from the sea van, VW and Porsche distributed those packages to local dealers. Hence, even if VW and Porsche acted as importers up to the moment that the vans were brought to the warehouse, once they entered the vans to remove the individual packages they did so with the intent and effect to act as wholesalers in 'the mass of property in the country. . . .' (*Brown* v. *Maryland, supra,* 25 U.S. at p. 441 [6 L.Ed. at p. 686].) Therefore, they cannot avail themselves of the constitutional immunity from local taxation.]"

In *Singer Co.* v. *County of Kings* (1975) 46 Cal.App.3d 852 [121 Cal.Rptr. 398], goods were placed by a foreign manufacturer in individual cartons; those cartons were loaded into cargo vans and delivered to Singer's warehouse in that condition. Singer unloaded the vans and placed the cartons in its warehouse, segregated, until they were reshipped, in their individual cartons, to Singer's own retail outlets. The

*Singer* court, relying on the first paragraph from *Volkswagen* above quoted, held that the removal from the vans and the storage awaiting reshipment did not remove the goods from the then recognized exemption. We have considered these two cases in two cases from this court. In *Nelco Corp.* v. *County of Los Angeles* (1977), *supra,* 72 Cal.App.3d 899, we said: "In the instant case, respondent Nelco conducts all of its sales directly from the warehouse. It does not, as in *Singer,* merely passively store the goods for later distribution to its own retail outlets and storage facilities connected therewith. Accordingly, we hold that when respondent entered the sea vans and unloaded them for the purpose of sales and distribution, it had, in fact, broken bulk and therefore, even under pre-*Michelin* law was no longer immune from imposition of the nondiscriminatory ad valorem personal property tax assessed by the county." Similarly, in *Craig Corp.* v. *County of Los Angeles* (1975) 51 Cal.App.3d 909 [124 Cal.Rptr. 621], we said (at pp. 917-918): "In the instant case the importers entered the cargo vans with the intent to act as a wholesaler in the mass of property. Therefore the opening of the vans in these particular circumstances by the wholesalers herein for the purpose of effecting a sale or delivery constituted a breaking of the bulk and a loss of immunity from taxation.

"Our conclusion is supported by *Singer Co.* v. *Kings County* (1975) 46 Cal.App.3d 852 [121 Cal.Rptr. 398]. In *Singer,* the retailer entered the cargo vans and removed the cartons, not for the purpose of sale as in *Volkswagen,* but solely to further store the packages until they could be shipped to its own retail outlets; as such, the goods in *Singer* remained immune from taxation. These facts in *Singer* are to be distinguished from the facts before us now, where the taxpayers did not enter the cargo vans acting as retailers seeking only to effect further storage, but as wholesalers seeking to remove the cartons for the purpose of effecting sale and delivery to dealers. The taxpayers herein have no constitutional immunity from taxation."

We conclude that the case at bench lies within the rule announced in our two earlier cases. ■ Although these tires were kept segregated from other items in plaintiff's inventory, that segregation was invaded not only to make transfers to other warehouses of plaintiff but, also, to quote from plaintiff's own brief in the trial court "for distribution to *other distributors,* jobbers and retailers." Plaintiff did not make, and does not here claim, that there was any subsegregation of tires intended for transfer to its own other warehouses and those intended for ship-

ment to its customers. Lacking any such subsegregation, the entire mass of imported tires fell within the facts in *Nelco* and in *Craig* and was subject to California taxation under the pre-*Michelin* law.

The judgment is affirmed.

Jefferson (Bernard), J., and Burke (M. L.), J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.