[Civ. No. 56827. Second Dist., Div. Two. Mar. 25, 1980.]

SEARS, ROEBUCK & COMPANY, Plaintiff and Respondent, v. COUNTY OF LOS ANGELES et al., Defendants and Appellants.

**60**

 

COUNSEL

John H. Larson, County Counsel, and James Dexter Clark, Deputy County Counsel, for Defendants and Appellants.

Loeb & Loeb, Frank M. Keesling, Andrew S. Garb, Thomas W. Henning, Jones, Hall & Arky and Ann K. Smith for Plaintiff and Respondent.

OPINION

FLEMING, J.—Defendants County of Los Angeles and City of Compton appeal a judgment in favor of plaintiff Sears, Roebuck & Company in an action to recover taxes paid under protest. The issue is whether certain goods imported by Sears and stored in its warehouses pending distribution to Sears' retail outlets during fiscal years 1973, 1974, and 1975 are immune from ad valorem taxation.

This litigation tracks certain changes in the applicable statutory and case law, which we summarize as follows: The import-export clause of the United States Constitution prohibits the states from laying any "imposts or duties on imports or exports." (U.S. Const., art. I, § 10, cl. 2.) In 1827 the United States Supreme Court in *Brown v. Maryland*, 25 U.S. (12 Wheat.) 419 [6 L.Ed. 678], determined that the import-export clause also prohibited taxation of imported goods. The court added, however, that goods lose their status as imports and become taxable when they have been "so acted upon" by the importer as to "become incorporated and mixed up with the mass of property in the country." But so long as the goods "[remain] the property of the importer, in his warehouse, in the original form or package in which [they are] imported, a tax upon [such imported goods]," the court reasoned, "is too plainly a duty on imports to escape the prohibition in the Constitution." (*Brown v. Maryland, supra*, pp. 441-422 [6 L.Ed., p. 439].) In 1871 the court in *Low v. Austin* (1872) 80 U.S. (13 Wall.) 29 [20 L.Ed. 517], extended the protection of the "original package doctrine" to prohibit nondiscriminatory ad valorem state property taxes on imported goods. (*May v. New Orleans* (1900) 178 U.S. 496 [44 L.Ed. 1165, 20 S.Ct. 976].) Courts continued to apply the original package doctrine to the ad valorem taxation of imported goods for over 100 years. But on January

14, 1976, the United States Supreme Court in *Michelin Tire Corporation* v. *Wages* (1976) 423 U.S. 276 [46 L.Ed.2d 495, 96 S.Ct. 535], concluded that ad valorem property taxes imposed on goods which were no longer in transit were not "duties or imposts" within the meaning of the import-export clause, and expressly overruled *Low* v. *Austin*, (*Michelin, supra,* 423 U.S., p. 279 [46 L.Ed.2d, p. 500]). Under *Michelin,* imported goods which have come to rest in the state are not immune from ad valorem taxation, whether or not they remain in their original packages.

In response to the *Michelin* decision the California Legislature, recognizing the potential unfairness and inequity that could result from a retroactive application of *Michelin,* (Assem. Bill No. 3061; see also *Schettler* v. *County of Santa Clara* (1977) 74 Cal.App.3d 990, 996-998 [141 Cal.Rptr. 731]), enacted Revenue and Taxation Code section 226, effective July 3, 1976, providing that "the validity of any ad valorem property tax assessment on imported goods, heretofore or hereafter imposed, levied or collected with respect to tax years prior to the 1976-1977 tax year shall be determined pursuant to statutory and case law in effect prior to the decision in Michelin v. Wages [citation]." However, after enacting section 226 the Legislature promptly amended the statute to permit limited, retroactive application of the *Michelin* decision. The amendment, effective September 20, 1976, provided that in "any assessment made prior to 14 January 1976, the court may, if the circumstances warrant and the taxing authority demonstrates that it would be equitable to do so, follow the decision in Michelin v. Wages."

At bench, the parties stipulated to the following facts: Sears, a New York corporation, purchases, imports, distributes, and sells imported and domestic goods at retail. During each of the years in question Sears purchased the goods upon which the contested assessments were made from foreign manufacturers and imported them into this country. The goods were originally packed in cardboard boxes, cartons, or packages, and shipped in cargo shipping containers (sea vans) to California. Upon arrival in California the goods were removed from the cargo shipping containers, sorted by type, and stored in Sears' warehouses pending distribution to Sears' retail stores and catalogue distribution centers. On the tax dates of 1973, 1974, and 1975, Sears was holding the subject goods as inventory at various warehouses throughout the City of Compton and the County of Los Angeles. Within the warehouses the goods remained in the unopened boxes, containers, or packages in which they

had been originally packed, and they were not commingled with domestic goods, which were held in separate warehouses.

In each of the tax years 1973, 1974, and 1975 Sears filed a claim for immunity from ad valorem taxation on the goods in question. The claims for immunity for 1973 and 1974 were allowed. The claim for immunity for 1975 was denied, and an assessment was made during 1975. Sears paid the 1975 tax under protest. Then, in 1976, following the decision of the United States Supreme Court in *Michelin*, the Los Angeles County Assessor levied escape assessments on Sears' 1973 and 1974 imports. These latter assessments were also paid by Sears under protest.

After exhausting its administrative remedies Sears commenced this action to recover the taxes collected by county and city on its 1973, 1974, and 1975 warehouse inventories of imported goods. The trial court found that statutory and case law in effect prior to *Michelin* prohibited the state from taxing the value of the imported goods stored in Sears' warehouses, and it concluded, therefore, that the goods were immune from ad valorem taxation under Revenue and Taxation Code section 226. On February 18, 1979, the trial court entered judgment directing county and city to refund the taxes with interest.

■ On appeal, defendants county and city assert the trial court erred in concluding that the goods were immune from taxation under the law in effect prior to *Michelin*. Specifically, defendants argue that under the pre-*Michelin* original package doctrine the goods lost their constitutionally protected status as imports when the containers in which they were packed were removed from the cargo shipping vans, which defendants assert constituted the "original packages." In support of their contention defendants cite *Volkswagen Pacific, Inc.* v. *City of Los Angeles* (1972) 7 Cal.3d 48, 55-56 [101 Cal.Rptr. 869, 496 P.2d 1237], wherein the Supreme Court found that certain imported automobile parts lost their immunity from state taxation when they were removed from sea vans similar to those at bench. But in *Volkswagen*, after the importers removed the individual parcels from the sea vans, they then proceeded with the sale of the goods at wholesale to local dealers and with the distribution of the goods as sold from their warehouses. "Hence, even if [the taxpayers therein] acted as importers up to the moment that the vans were brought to the warehouse, once they entered the vans to remove the individual packages they did so with the

intent and effect to act as wholesalers in 'the mass of property in the country . . . .' (*Brown* v. *Maryland, supra*, 25 U.S. at p. 441 [6 L.Ed. at p. 686].)" In that context, the opening of the cargo vans signified, "a breaking of bulk for the sale of the separate parcels" contained therein, and the items in the parcels could be taxed. (*Volkswagen Pacific, Inc.* v. *City of Los Angeles, supra*, pp. 55-56.) However, the court added, the opening of a cargo container would not subject the goods contained therein to tax liability if the importer's purpose in removing the goods from the van was to facilitate their storage and their subsequent transportation to his own retail outlets rather than to effect their sale and delivery to dealers. (*Volkswagen, supra*, pp. 55-56.) Under *Volkswagen*, as well as the subsequent cases which have addressed this issue, it is clear that prior to *Michelin* goods removed from sea vans and then stored in the importer's warehouse retained their immunity from taxation while awaiting further shipment to the importer's wholesale or retail outlets. (*Singer Co.* v. *County of Kings* (1975) 46 Cal.App.3d 852 [121 Cal.Rptr. 398]; *Montgomery Ward & Co., Inc.* v. *County of Alameda* (N.D.Cal. 1975) 390 F.Supp. 177; cf. *Craig Corp.* v. *County of Los Angeles* (1975) 51 Cal.App.3d 909, 917-18 [124 Cal.Rptr. 621]; *Nelco Corp.* v. *County of Los Angeles* (1977) 72 Cal.App.3d 899, 903 [140 Cal.Rptr. 328]; *J.N. Ceazan Co.* v. *County of Los Angeles* (1980) 102 Cal.App.3d 486 [162 Cal.Rptr. 414].)

At bench, the imported goods, once removed from the sea vans, were stored in Sears' warehouses in the form in which they had been originally packed for shipment, and there they awaited distribution to Sears' retail outlets. Under statutory and case law in effect prior to *Michelin* these goods were immune from taxation. Because Revenue and Taxation Code section 226 prohibits retroactive application of the January 14, 1976, *Michelin* decision to goods which escaped assessment prior to that date, the escape assessments subsequently levied in 1976 on the 1973 and 1974 imports were invalid.

We further agree with the trial court's conclusion that the 1975 imports, which were assessed prior to the *Michelin* decision, were also immune from taxation. The amendment to section 226 permits the courts to apply the *Michelin* decision retroactively, if the goods were assessed before January 1976, and "if the circumstances warrant and the taxing authority demonstrates that it would be equitable to do so." Defendants failed to show how the equities or the circumstances at bench would warrant a retroactive application of *Michelin*, particularly in

view of the stipulated fact that prior to *Michelin* Sears believed its imported goods were immune from ad valorem property taxes and had priced the goods accordingly.

The judgment is affirmed.

Roth, P. J., and Beach, J., concurred.